Case No: 1:23-cv-00811-EGB

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Larry Golden, Pro Se Plaintiff

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

(H) 864-288-5605

(M) 864-992-7104

(E) atpg-tech@charter.net

| | |
|---|---|
| LARRY GOLDEN,<br>*Plaintiff*,<br><br>V.<br><br>THE UNITED STATES,<br>*Defendant*. | **Patent Infringement**<br><br><br>July 25, 2023 |

**PLAINTIFF'S RESPONSE TO THE GOVERNMENT'S MOTION TO STAY BRIEFING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT**

## JURISDICTION AND VENUE

Pursuant to 28 U.S. Code § 1498 (a): "Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture" …

"(F)or the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor [i.e., the Department of Defense (DOD)], a subcontractor [i.e., the Defense Threat Reduction Agency (DTRA)], or any person, firm, or corporation [Draper Laboratory, Inc.] for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States."

### Scope of Section 1498(a)

As § 1498(a) infringement actions are grounded in eminent domain and not defined by statute, the scope of what constitutes the unlawful taking of a license to use a patent is a creature of case law. As such, the basis for the USCFC's jurisdiction over infringement actions must be linked to the government's taking of a patent license through its "use or manufacture" of the patented invention "without license of the owner thereof or lawful right." *Decca Ltd. v. United States*, 640 F.2d 1156, 1166–67 (Ct. Cl. 1980). Retrieved from: https://www.uscfc.uscourts.gov/node/2927 "*Intellectual Property Suits in the United States Court of Federal Claims*"

### "For the Government"

In *Advanced Software Design Corp. v. Federal Reserve Bank of St. Louis*, the Federal Circuit interpreted the term "for the government" to mean that the government derives a benefit from the use or manufacture of the patented technology. 583 F.3d 1371, 1376–77 (Fed. Cir. 2009). For example, the patented technology itself must be used "in furtherance and fulfillment of a stated Government policy," which would serve the government's interest, for the government's benefit. *IRIS Corp. v. Japan Airlines Corp.*, 769 F.3d 1359, 1362 (Fed. Cir. 2014) (quoting *Madey v. Duke Univ.*, 413 F. Supp. 2d 601, 607 (M.D.N.C. 2006)). Retrieved from: https://www.uscfc.uscourts.gov/node/2927 "*Intellectual Property Suits in the United States Court of Federal Claims*"

## "Authorization or Consent"

The government's authorization of or consent to a contractor's infringing activity may be express or implied. *TVI Energy Corp. v. Blane*, 806 F.2d 1057, 1060 (Fed. Cir. 1986); *Hughes Aircraft Co. v. United States*, 534 F.2d 889, 901 (Ct. Cl. 1976). Federal Acquisition Regulation (FAR) 52.227-1 contains an express grant of "authorization and consent" for contractors [i.e., the Department of Defense (DOD)] and subcontractors [i.e., the Defense Threat Reduction Agency (DTRA)] for the use and manufacture of any patented invention (1) embodied in the structure or composition of any article delivered to and accepted by the government related to a government contract; or (2) used in machinery, tools, or methods necessary for a contractor to comply with the specifications of a contract, or if such use is directed by a contracting officer's specific written instructions.48 C.F.R. § 52.227-1; see also *Sevenson Envtl. Servs., Inc. v. Shaw Envtl., Inc.*, 477 F.3d 1361, 1367 (Fed. Cir. 2007); TDM Am., LLC v. United States, 83 Fed. Cl. 780, 784–86 (2008). Retrieved from: https://www.uscfc.uscourts.gov/node/2927 "*Intellectual Property Suits in the United States Court of Federal Claims*"

## "Implied Authorization"

To succeed on an implied authorization theory there must be some explicit government action, such as a contracting officer's instruction, or evidence extrinsic to the contract language showing the government's intention to assume liability. *Va. Panel*, 133 F.3d at 870; *Larson*, 26 Cl. Ct. at 370. In *Larson v. United States*, the Claims Court recognized that implied authorization "may be found under the following conditions: (1) the government expressly contracted for work to meet certain specifications [1]; (2) the specifications cannot be met without infringing on a patent; and (3) the government had some knowledge of the infringement." *Larson*, 26 Cl. Ct. at 370 (citing *Bereslavsky v. Esso Standard Oil Co*., 175 F.2d 148, 150 (4th Cir. 1949); *Carrier Corp. v. United States*, 534 F.2d 244, 247–50 (Ct. Cl. 1976); *Hughes*, 534 F.2d at 897–901). Retrieved from: https://www.uscfc.uscourts.gov/node/2927 "*Intellectual Property Suits in the United States Court of Federal Claims*"

---

[1] This case is about the government's infringement, not Google's infringement. We know Google was not a contractor or subcontractor, and yet, the Government has failed to produce any evidence that proves "the government expressly contracted [Google] for work to meet certain specifications"

## VERTICAL STARE DECISIS

The United States Court of Appeals for the Federal Circuit is a federal court that has special importance in patent law. The Federal Circuit does not have jurisdiction over a particular region.  Instead, it has jurisdiction over all appeals in cases that "arise under" the patent laws. The Federal Circuit's jurisdiction over appeals in patent cases is exclusive.  Other circuit courts cannot review decisions in those cases.

Congress created the Federal Circuit in 1982 to be a court with specialized expertise in patent law.  In giving it exclusive jurisdiction over patent cases, Congress aimed to ensure that the interpretation of the patent laws, and applicable legal precedent, would be uniform throughout the nation, and not vary among regional circuits.

 Consistent with that, the Federal Circuit has developed a large body of precedent governing patent cases: how to interpret patent claims, how infringement must be proved, how invalidity must be established, and how damages must be calculated.  Successful patent litigation in the district courts requires diligently the following of the Federal Circuit's pronouncements on those issues.

Vertical stare decisis binds lower courts to follow strictly the decisions of higher courts within the same jurisdiction (e.g., the U.S. Court of Federal Claims must follow the decisions of the U.S. Court of Appeals for the Federal Circuit). The Supreme Court defines vertical stare decisis as the doctrine, "a lower court must strictly follow the decision(s) handed down by a higher court within the same jurisdiction".

A court engages in vertical stare decisis when it applies precedent from a higher court. For example, if the U.S. Court of Federal Claims adhered to a previous ruling from the U.S. Court of Appeals for the Federal Circuit, that would be vertical stare decisis.

The Federal Circuit on 09/08/2022, in *Larry Golden v. Google LLC*; Case No. 22-1267 — "VACATED AND REMANDED" the relevant Case No: 22-1267 Document 15; back to the District Court "to be filed and request service of process". The Federal Circuit determined the complaint, "includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" … "in a relatively straightforward manner" … and that the [Circuit] "express no opinion as to the adequacy of the complaint or claim chart except that it is not facially frivolous."

Three-Judge Panel: "DISCUSSION. 'Under the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), a court must dismiss a complaint if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 … [T]his standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (citation omitted). A plaintiff must allege facts that give rise to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted) … this court has explained that a plaintiff … must plead "'enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged."

"Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 … It [claim chart] attempts [] to map claim limitations to infringing product features, and it does so in a relatively straightforward manner …[W]e conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart. Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart.…"

Vertical Stare Decisis bars the Government from challenging, and this Court from overturning, the Federal Circuit's ruling: "the complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" … 'in a relatively straightforward manner'"

Below is a list of "sensor types supported by the 'Android' platform, that can be found in the first original complaint filed in the U.S. District Court for the District of South Carolina – Greenville Division. The alleged facts were included in the original complaint because Plaintiff knew and understood he "must allege facts that give rise to "more than a sheer possibility that the Defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).

On appeal in *Larry Golden v. Google LLC*; Case No. 22-1267, the Federal Circuit determined Plaintiff has "pled enough fact[s] to raise a reasonable expectation that discovery will reveal that the Defendant is liable for the misconduct alleged."

5

Therefore, according to the doctrine of "*Vertical Stare Decisis*" the Government is barred from challenging, and this Court is barred from relitigating the specifications of the Google Pixel 5 and the Android Team Awareness Kit (ATAK), that was decided as being nonfrivolous in U.S. Court of Appeals for the Federal Circuit: See the sensor types for "Android" listed below:

_____

### SENSOR TYPES SUPPORTED BY THE "*ANDROID*" PLATFORM

- **BIOMETRICS**: Biometric factors allow for secure authentication on the Android platform. The Android framework includes face and fingerprint biometric authentication. Android can be customized to support other forms of biometric authentication (such as Iris).

- **DISABLING LOCK MECHANISM:** Google's Android operating system features a lock mechanism to secure your phone, known as pattern lock. When setting the pattern, you must drag your finger along lines on the screen between different nodes. Afterward, to unlock the phone, you'll need to replicate the pattern drawn. If you fail to solve the pattern too many times, the phone locks and cannot be unlocked without logging into the associated Google account. If you can't log in, you'll have to employ some other methods to restore control of your phone.

- **CHEMICAL, BIOLOGICAL, RADIOLOGICAL, AND NUCLEAR (CBRN) DETECTION:** Through collaboration and innovation, the Defense Threat Reduction Agency has integrated its powerful, hazard-awareness-and-response tools into the *Android Tactical Assault Kit (or the Android Team Awareness Kit, ATAK)*. ATAK is a digital application available to warfighters throughout the DoD. Built on the Android operating system, ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins.

- **HEART RATE**: *Android Team Awareness Kit, ATAK* provides a single interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents.

- **NEAR FIELD COMMUNICATION (NFC)**: Pixel™, Phone by Google - Turn NFC on/off. Near Field Communication (NFC) allows the transfer of data between devices that are a few centimeters apart, typically back-to-back. NFC must be turned on for NFC-based apps (e.g., Tap to Pay) to function correctly. NFC is a set of short-range wireless technologies, typically requiring a distance of 4cm or less to initiate a connection. NFC allows you to share small payloads of data between an NFC tag and an Android-powered device, or between two Android-powered devices. Tags can range in complexity.

- **WARFIGHTERS:** The U.S. armed forces and their interagency and coalition partners value *Android Team Awareness Kit, ATAK* and the common operating picture it provides. DTRA continues to develop CBRN-specific plug-in capabilities to support warfighters on the battlefield.

_____

The Federal Circuit has determined Golden has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 … pled "'enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged". The decision cannot be overturned by the lower Court of Federal Claims.

In the Federal Circuit's language, "a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189", indicates a determination has been made on direct infringement, either literally or under the doctrine of equivalents.

Therefore, when the Federal Circuit states, ""express no opinion as to the adequacy [the state or quality of being adequate] of the complaint or claim chart except that it is not facially frivolous", means the Circuit is not expressing an opinion on whether the direct infringement is literal direct infringement or direct infringement under the doctrine of equivalents.

"Literal infringement" means that each and every element recited in a claim has identical correspondence in the allegedly infringing device or process. "Under the doctrine of equivalents, a product or process that does not literally infringe . . . the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention.'" *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998)

For an infringement analysis & litigation, claim charts help confirm or dis-confirm that each and every limitation of the claim is present in a product, service, or standard. An Evidence-of-Use (EoU) or Infringement Chart shows how a product or process accused of infringement contains each claim element to satisfy the 'all elements test' for infringement.

Below, (*Figure 1*) Plaintiff displays the claim limitations of claim 5 of the '287 patent; claim 23 of the '439 patent; and claim 1 of the '189 patent; to the Google Pixel 5 smartphone elements for chemical, biological, radiological, and nuclear (CBRN) sensing.

The chart below represents a scaled down version of the claim chart presented in the U.S. Court of Appeals for the Federal Circuit in *Larry Golden v. Google LLC*; Case No. 22-1267, that identifies the elements of the Smartphone and satisfies the patent claims requirement for CBRN sensing. Scaled down because the ATAK (Android operating system) include nearly 1,300 brands that have produced over 24,000 distinct Android devices (android.com). It is not just about Google or a Google device [Google Pixel 5 smartphone].

*Figure 1*

| Google Pixel 5 Smartphone | Patent #: 10,163,287; Independent Claim 5 | Patent #: 9,589,439; Independent Claim 23 | Patent #: 9,096,189; Independent Claim 1 |
|---|---|---|---|
| | A monitoring device, comprising: | A cell phone comprising: | A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal for monitoring products, interconnected to a product for communication therebetween, comprising: |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents. | at least one sensor for chemical, biological, or human detection in communication with the at least one CPU; | the cell phone is at least a fixed, portable or mobile communication device interconnected to the cell phone detection device, capable of wired or wireless communication therebetween; and | the communication device is at least a fixed, portable or mobile communication device interconnected to a fixed, portable or mobile product, capable of wired or wireless communication therebetween… |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | one or more detectors in communication with the at least one CPU for detecting at least one of chemical, biological, radiological, or explosive agents; | at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor capable of being disposed within, on, upon or adjacent the cell phone; | wherein the communication device receives a signal via any of one or more products listed in any of the plurality of product grouping categories; |

| | | | |
|---|---|---|---|
| Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | at least one of a transmitter or a transceiver in communication with the at least one CPU configured to send signals to monitor at least one of a door, a vehicle, or a building, send signals to lock or unlock doors, send signals to control components of a vehicle, send signals to control components of a building, or… detect at least one of a chemical biological… agent such that the communication device is capable of communicating, monitoring, detecting, and controlling. | a transmitter for transmitting signals and messages to a cell phone detection device; a receiver for receiving signals from the cell phone detection device; | a transmitter for transmitting signals and messages to at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device;<br><br>a receiver for receiving signals, data or messages from at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device; |
| Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | X | X | whereupon the communication device, is interconnected to a product equipped to receive signals from or send signals to lock or unlock doors, activate or deactivate security systems, activate or deactivate multi-sensor detection systems, or to activate or deactivate cell phone detection systems |

9

| | | | |
|---|---|---|---|
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | X | a transmitter for transmitting signals and messages to a cell phone detection device; a receiver for receiving signals from the cell phone detection device; | wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection… short range radio frequency (RF) connection is capable of signal communication with the transmitter and the receiver of the communication device and transceivers of the products; |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | X | whereupon a signal sent to the receiver of the cell phone detection device from at least one of the chemical sensor, the biological sensor, the explosive sensor, the human sensor, the contraband sensor, or the radiological sensor, causes a signal that includes at least one of location data or sensor data to be sent to the cell phone. | X |

## THE DOD-DTRA SPECIFICATIONS CANNOT BE MET WITHOUT INFRINGING GOLDEN'S PATENTS

International terrorism - demands the Government to make efforts to apply new principles and technologies to protect society against chemical, biological, radiological and nuclear (CBRN) attacks and to develop novel effective technological processes for CBRN detection.

iTAK, ATAK, and WinTAK are government-off-the-shelf apps for iOS smartphones, Android smartphones, and laptops, tablets and desktop PCs that uses Windows.

10

iTAK, ATAK, and WinTAK enables collaboration across multiple components that were unable to communicate when on joint missions because they use different equipment, radio frequencies or encryption.

Now, components such as Customs and Border Protection (CBP), Immigration and Customs Enforcement (ICE), U.S. Secret Service (USSS), U.S. Coast Guard (USCG), FEMA, state police, local police, and others can all be connected during operations. This is ideal for designated National Special Security Events (NSSE) such as the Super Bowl, Presidential Inauguration, summits with world leaders, large parades, etc.

In parallel with the development of specialized hardware should be the development of the application that will run on the smartphone, that will allow the hardware to be used for these specialized needs. Depending on the smartphones used or deployed, the applications will need to be written for Android, iOS, and Windows.

The TAK suite of tools uses plugins, allowing users to design applications specific to their mission needs. For example, iTAK, ATAK, and WinTAK can connect to sensors, satellites, drones, and smartwatches, enabling integration of valuable data from operators and team members and the environment.

Draper Laboratory, Inc. designed a chemical, biological, radiological and nuclear (CBRN) Plugin to enable users to integrate CBRN sensors into TAK, collect CBRN sensor data, display it on a map and livestream it across the TAK network to other users. CBRN plugins for iTAK, ATAK, and WinTAK are operational in the field.

Draper's $415,000 contract calls for Draper to also provide maintenance support, technical services, testing, evaluation and training for TAK. The TAK application supports the Nuclear Enterprise Contingency Operations Department's (NE-COs) various chemical, biological, radiological and nuclear (CBRN) detector systems.

In a matter of first impression, the Federal Circuit in *FastShip, LLC v. U.S.*, "[W]e interpret "manufactured" in § 1498 [] such that a product is "manufactured" when it is made to include each limitation of the thing invented and is therefore suitable for use."

- "According to its ordinary, contemporary, common meaning, ruling that the plain meaning of "manufactured" encompasses products made or worked into a form that is suitable for use."

Therefore, CBRN plugins for iTAK, ATAK, and WinTAK could never be "suitable for use" without Golden's patented CMDC devices; CPUs; and Detectors/Sensors for CBRN detection. The Federal Circuit in *Larry Golden v. Google LLC*; Case No. 22-1267 confirmed the claim chart "map[ped] claim limitations to infringing product features, and it does so in a relatively straightforward manner". According to the doctrine of *vertical stare decisis*, this analysis cannot be overturned in the lower Court of Federal Claims.

> "Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 … It [claim chart] attempts [] to map claim limitations to infringing product features, and it does so in a relatively straightforward manner … [W]e conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart."

Draper Laboratory, Inc. has developed software for every version of TAK (i.e., iTAK, ATAK, & WinTAK) and the CBRN sensor plugin since it was first developed by the Department of Defense (DOD) Defense Threat Reduction Agency (DTRA).

## Unmanned Aerial Vehicles (UAVs) for CBRN Detection

Draper is working with the Department of Defense under a three-year contract to address these challenges—and improve UAVs—by focusing on the most challenging aspects of autonomous navigation. In a series of recent demonstrations, a team from Draper and the DoD customer tackled technical issues related to reducing collisions, enhancing onboard intelligence and developing new robust navigation methods.

Draper's new capability is to equip small UAVs so that they can fly ahead of a military unit to scout a location and sense the presence of chemical, biological, radiological and nuclear (CBRN) elements. Hazard detection using a small UAV can reduce the kinds of risks soldiers might encounter by scouting a location using handheld or vehicle-mounted sensors.

The Department of Defense has awarded Neya Systems, [Neya Systems develops and integrates advanced, vehicle-agnostic, off-road and airborne autonomy] a contract to create a Tactical Assault Kit plugin (TAK Plugin). Neya Systems said its Mission Planning and Management System will allow TAK operators to deploy systems equipped with chemical, biological, radiological and nuclear sensors.

Neya Systems $1 million contract supports the Defense Threat Reduction Agency (DTRA), a DOD component that specializes in addressing weapons of mass destruction and emerging threats. According to Neya Systems, the MPMS-TAK plugin will take advantage of an existing library of CBRN procedural templates for locating and monitoring threats.

The DOD has allegedly *authorized and consented* to infringing Golden's patented pre-programmed stall, stop, vehicle slow-down system for unmanned and autonomous vehicles, capable of CBRN detection. See claims 1 & 2 of Golden's 11,645,898 patent below:

1.      A pre-programmed stall, stop, vehicle slow-down system, that comprises at least one central processing unit (CPU), capable of:

processing instructions to stall, stop, or slow-down a vehicle when the vehicle receives a signal from at least one of a personal computer (PC), a cellphone, a smartphone, a laptop, a tablet, a PDA, or a handheld;

processing instructions to stall, stop, or slow-down a vehicle when the vehicle receives a signal from at least one of cellular, satellite, or radio-frequency (RF);

processing instructions to stall, stop, or slow-down a vehicle when the vehicle is experiencing unintended acceleration;

processing instructions to stall, stop, or slow-down a vehicle when the vehicle is experiencing lane departure;

processing instructions to stall, stop, or slow-down a vehicle when a collision or crash is detected;

processing instructions to stall, stop, or slow-down a vehicle when the vehicle has been reported as stolen;

processing instructions to stall, stop, or slow-down a vehicle when the vehicle has moved outside a pre-programmed designated perimeter;

<u>processing instructions to stall, stop, or slow-down a vehicle when at least one of a chemical hazard, a biological hazard, a radiological hazard; a nuclear hazard; or explosives have been detected;</u>

<u>processing instructions to stall, stop, or slow-down a vehicle when the vehicle is at least a driverless vehicle; a self-drive vehicle; an autonomous vehicle; a human</u>

controlled vehicle; a manned or unmanned convoy vehicle, or a manned or unmanned aerial, land, or sea vehicle; and,

    Wherein, when the central processing unit (CPU) processes instructions to stall, stop, or slow-down a vehicle, a distress signal is sent to at least one of a monitoring site, a control center, or is recorded for storage.

2.    A vehicle, that comprises at least one onboard computer system, electronic system, fuel system, air system, braking system, ignition system, transmission system, or PowerDrive system, capable of:

    stalling, stopping, or slowing down a vehicle when the vehicle receives a signal from at least one of a personal computer (PC), a cellphone, a smartphone, a laptop, a tablet, a PDA, or a handheld;

    stalling, stopping, or slowing down a vehicle when the vehicle receives a signal from at least one of cellular, satellite, or radio-frequency (RF);

    stalling, stopping, or slowing down a vehicle when the vehicle is experiencing unintended acceleration;

    stalling, stopping, or slowing down a vehicle when the vehicle is experiencing lane departure;

    stalling, stopping, or slowing down a vehicle when a pedestrian, obstacle, collision or crash is detected; stalling, stopping, or slowing down a vehicle when the vehicle has been reported as stolen;

    stalling, stopping, or slowing down a vehicle when the vehicle has moved outside a pre-programmed designated perimeter;

    stalling, stopping, or slowing down a vehicle when at least one of a chemical hazard, a biological hazard, a radiological hazard; a nuclear hazard; or explosives have been detected;

    stalling, stopping, or slowing down a vehicle when the vehicle is at least a driverless vehicle; a self-drive vehicle; an autonomous vehicle; a human controlled vehicle; a manned or unmanned convoy vehicle, or a manned or unmanned aerial, land, or sea vehicle; and,

    Wherein, the vehicle is stalled, stopped, or slowed down, a distress signal is sent to at least one of a monitoring site, a control center, or is recorded for storage.

Therefore, CBRN detection onboard unmanned and autonomous vehicles could never be "suitable for use" without Golden's patented Pre-Programmed Stall, Stop, Vehicle Slow-Down System, Detectors/Sensors for CBRN, and in most situations Golden's patented CMDC devices.

## CONCLUSION

A "Stay" is simply a waste of time. The Government's defense is insufficient and barred under the doctrine of "*Vertical Stare Decisis*" The Federal Circuit has already decided on the sufficiency of the complaint, claim chart, and patent claims. This Court must honor and respect the Circuit's decision that Golden has alleged enough facts to give rise to "more than a sheer possibility that the Defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted) … and pled "enough fact[s] to raise a reasonable expectation [] that the Defendant is liable for the misconduct alleged.

Sincerely,

s/ *Larry Golden*

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605

Email: atpg-tech@charter.net

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 25th day of July, 2023, a true and correct copy of the foregoing "Plaintiff's Response to the Government's Motion to Stay Briefing on Plaintiff's Motion for Summary Judgement", was served upon the following Defendant by priority "express" mail and via email:

Grant D. Johnson

Trial Attorney

Commercial Litigation Branch

Civil Division

Department of Justice

Washington, DC 20530

Grant.D.Johnson@usdoj.gov

(202) 305-2513

s/ *Larry Golden*

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, S.C. 29607

atpg-tech@charter.net

864-288-5605