Case No: 1:23-cv-00811-EGB

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Larry Golden, Pro Se Plaintiff

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

(H) 864-288-5605

(M) 864-992-7104

(E) atpg-tech@charter.net

| | |
|---|---|
| LARRY GOLDEN,<br>   *Plaintiff*,<br><br>V.<br><br>THE UNITED STATES,<br>   *Defendant*. | **Patent Infringement**<br><br><br>August 4, 2023 |

### PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S
### MOTION FOR DISQUALIFICATION

  This reply, in support of Plaintiff's motion to dismiss, consist of substantial evidence that there exists such a personal bias, prejudice or interest on the part of the Judge [Bruggink] that the Judge would be unable to rule impartially." *State v. Fie*, 320 N.C. 626, 627 (1987); accord *State v. Honaker*, 111 N.C. App. 216 (1993); *In re Nakell*, 104 N.C. App. 638 (1991). Plaintiff pleadings demonstrates objectively that grounds for disqualification actually exist.

  Plaintiff's allegations in this motion to disqualify and recuse are such that findings of facts will be required regarding the alleged basis of the Judge's bias or conflict, [Therefore] the

Judge should refer the matter to another Judge to conduct the hearing. See *N.C. Nat'l Bank v. Gillespie*, 291 N.C. 303 (1976) (citing *Ponder v. Davis*, 233 N.C. 699 (1951)).

Plaintiff have asked that the case be transferred to Judge Patricia Elaine Campbell-Smith because she has an undergraduate degree in electrical engineering from Duke University and extensive patent litigation experience with the law firm of Liskow & Lewis in New Orleans, Louisiana. "[T]he standard for ordering recusal is whether there are reasonable grounds to question the Judge's objectivity. The Judge is only required to order recusal (or refer the matter over to another Judge to decide whether recusal is necessary) if a reasonable person, knowing all the facts, would have doubts about the Judge's ability to be impartial in the case. See *State v. Vick*, 341 N.C. 569 (1995); *State v. Fie*, 320 N.C. 626 (1987); *State v. Poole*, 305 N.C. 308 (1982); *State v. Moffitt*, 185 N.C. App. 308 (2007); *State v. McRae*, 163 N.C. App. 359 (2004).

Plaintiff have doubts about the Judge's ability to be impartial in the case; and that the Judge would be unable to rule impartially, because Plaintiff believes Judge Bruggink is being intimidated and forced to act or decide cases under duress created by the Department of Justice (DOJ) and the Department of Homeland Security (DHS).

In certain limited circumstances, a Judge may be removed from office for "incompetency, misconduct, neglect of duty, engaging in the practice of law, or physical or mental disability" by the U.S. Court of Appeals for the Federal Circuit.  28 U.S.C. § 176(a) [1]

---

[1] 28 U.S.C. § 176 – Removal from Office

(a) Removal of a judge of the United States Court of Federal Claims during the term for which he is appointed shall be only for incompetency, misconduct, neglect of duty, engaging in the practice of law, or physical or mental disability. Removal shall be by the United States Court of Appeals for the Federal Circuit, but removal may not occur unless a majority of all the judges of such court of appeals concur in the order of removal.

(b) Before any order of removal may be entered, a full specification of the charges shall be furnished to the judge involved, and such judge shall be accorded an opportunity to be heard on the charges.

(c) Any cause for removal of any judge of the United States Court of Federal Claims coming to the knowledge of the Director of the Administrative Office of the United States Courts shall be reported by him to the chief judge of the United States Court of Appeals for the Federal Circuit, and a copy of the report shall at the same time be transmitted to the judge.

# ACTING UNDER "DURESS"; FORCE AND INTIMIDATION

## History of the Government's Intimidation and Threats

The CFC Judge in *Golden v. USA* Case No. 13-307C, was intimidated and forced to act under duress, by the Department of Justice (DOJ) and the Department of Homeland Security (DHS) to drop Plaintiff's Fifth Amendment "Takings" of Plaintiff's property claim [28 U.S.C. 1491(a)] against the DHS; in view of the fact that Plaintiff, over a four-year period, received response letters from President Bush, VP Cheney, and three South Carolina U.S. Senators Holland, DeMint, and Graham stating they sent Plaintiff's strategies and technology rational over to the DHS. The DHS in 2008 awarded eight (8) white-owned companies' [Qualcomm, Apple, Samsung, LG, NASA, Synkera, SeaCoast, and Rhevision] contracts to develop, manufacture, and commercialized the patented technology of Plaintiff. The only African American owned company [ATPG Technology, LLC], who's African American CEO [Plaintiff] hold the patent(s) on the technology the DHS requested in its DHS S&T BAA07-10 *Cell-All Ubiquitous Biological and Chemical Sensing* solicitation, never received a licensing agreement or contract. The CFC Judge, while acting under Duress, dropped the original Fifth Amendment "Takings" of Plaintiff's property claim, that ripen in 2008 when the DHS awarded eight (8) white-owned companies' contracts to develop, manufacture, and commercialized the patented technology of Plaintiff, and changed the Fifth Amendment "Takings" of Plaintiff's property claim, to a claim of "takings" that sounds in patent infringement to dismiss the case.

> "Pending before the court is defendant's March 18, 2019 motion to dismiss plaintiff's takings claims under Rules 12(b)(l) and 12(b)(6) of the Rules of the United States Court of Federal Claims. Defendant argues that plaintiffs purported takings claims are, in substance, patent infringement claims, which cannot be brought under the Tucker Act, 28 U.S.C. § 1491 (2012), but must instead be brought under the court's separate patent jurisdiction, 28 U.S.C. § 1498(a) (2012)." *Golden v. US* Case No. 13-307C Dkt. No. 171 Filed 05/08/2019

The PTAB Judges at the United States Patent and Trademark Office (USPTO) Patent Trials and Appeals Board (PTAB) in *Department of Homeland Security v. Larry Golden*, Case No. IPR2014-00714, were intimidated and forced to act under duress, by the DHS and the DOJ, who were not, and is not, "persons" authorized to petition the PTAB to invalidate the patents of

3

Plaintiff; to institute a trial to invalidate Plaintiff's '990 patent claims with the unqualified patent references of Astrin, Breed, and Mostov that does not antedate the priority date of Plaintiff's Patents. The PTAB was forced to ignore the fact that no "white" patent owner has ever had to defend his patent(s) at the PTAB against an unauthorized Government agency; and no "white" patent owner has ever had to defend his patent(s) at the PTAB against unqualified patent references that do not antedate the priority date of "white" patent owner's patents, asserted in an *Inter Partes Review* (IPR) by an unauthorized Government agency. Clearly the DOJ & DHS intimidated and forced the Judges to invalidate the Patent Owner's patent claims as a means of retaliating against Plaintiff for filing a complaint against the DHS. The Supreme Court has defined retaliation as an intentional act in response to a protected action. It carries with it the notion of "getting even." As noted in a 2011 law review article: "Retaliation is the deliberate action against African American inventors, used to send a clear message that complaining is unwelcome and risky. *Dred Scott v. Sandford* (1857). In this ruling, the U.S. Supreme Court stated that enslaved people were not citizens of the United States and, therefore, could not expect any protection from the federal government or the courts. Arguably, free blacks were precluded from patenting their inventions after *Dred Scott* because they did not have a country of citizenship and presumably could not swear to the Patent Oath. The Court viewed slaves as "property," and the Fifth Amendment forbids Congress from taking property away from individuals without just compensation.

      The PTAB Judges in *Department of Homeland Security v. Larry Golden*, Case No. IPR2014-00714, were intimidated and forced to act under duress, by the DHS and the DOJ, to ignore the multiple times the Patent Owner "begged" the DOJ, DHS, and PTAB before, during, and after the institution of the *Inter Partes Review* (IPR) to not take the Patent Owner's patent claims with unqualified patent references. *Procedural Due Process* refers to the constitutional requirement that when the federal government acts in such a way that denies a citizen [Patent Owner] of a life, liberty, or property interest, the person must be given notice, the opportunity to be heard, and a decision by a neutral decision-maker. The following is Patent Owner's evidence:

> ***Patent Owner's Preliminary Response (Paper 10).*** The anticipation basis describes whether the reference is being considered for by its publication date or its priority date. The Patent Owner repeated the DHS/DOJ's anticipation basis in a chart distinguishing: Reference Filing Date / Publication Date (i.e., 120(b)) / Basis for

anticipation—Priority Date (102(e)), for U.S. Patent Application Publication No. 2006/0250235 ("Astrin") Publication Date 11/09/2006 Basis 102(b); U.S. Patent Application Publication No. 2006/0181413 ("Mostov") Publication Date 08/17/2006 Basis 102(b); and, U.S. Patent No. 7,961,094 ("Breed") Priority Date 11/29/2007 Basis 102(e). With this disclosure in a preliminary response to the DHS/DOJ's petition for Inter Partes Review (IPR), and the DHS/DOJ's unwillingness to correct their mistake, signifies the DHS/DOJ was willfully blind by intentionally keeping themselves unaware of facts that would render them liable or implicated.

**ORDER Conduct of the Proceeding 37 C.F.R. § 42.5 (Paper 23)**. "We noted that, while we are not constraining what Mr. Golden can argue in the Patent Owner Response, he may be best served by focusing on the challenges on which trial was instituted" [*the PO understood this to mean, the PTAB did recognize Astrin, Breed, & Mostov as being unqualified references, and that the PO had better focus on the challenge of showing how the PO's patent claims was not antedated by the unqualified references*]; "If the Motion to Amend is non-contingent, Mr. Golden is, in essence, abandoning the claims at issue, and saying that we should only look at the claims as amended in the Motion to Amend" [*if the Motion to Amend was non-contingent, and the PO was abandoning the claims at issue, and the PO's intention was to submit new substitute claims, the PO would have stated that in his Motion to Amend submitted on January 7, 2015—but he did not*]; "Mr. Golden has the burden to show a patentable distinction for each proposed substitute claim over the prior art" [*not possible, the way anticipation works is the references of Astrin, Breed, & Mostov has a priority date that antedates the PO's priority date for the RE43,990 patent asserted in the IPR, but because the references of Astrin, Breed, & Mostov priority date does not antedate the PO's priority date for the RE43,990 patent, it is procedurally impossible*]; "In addition, if Mr. Golden is relying on any priority documents to establish an effective filing date, he should also point to where support occurs in those priority documents" [*the only priority document the PO needed to show priority over Astrin, Breed, & Mostov's "basis for anticipation" was the PO's patent no. RE43,990 asserted in the IPR*] …

**Patent Owner's Response (Paper 24)**. "The PO again presented the DHS/DOJ with an opportunity to correct their mistake in the Patent Owner's Response, "[t]hus, the

'990 patent antedates Astrin (published on 11/09/2006) and Mostov (published on 08/17/2006), thus resulting in both being ineligible as prior art under 102(b), and antedates Breed (filed on 11/29/2007), thus resulting in it being ineligible as prior art under 102(e)." With this disclosure in the Patent Owner's Response, and the DHS/DOJ's unwillingness to correct their mistake, signifies the DHS/DOJ was willfully blind by intentionally keeping themselves unaware of facts that would render them liable or implicated. It can also be said that, at this point the DHS/DOJ knew, or should have known, the references of Astrin, Breed, & Mostov does not antedate the priority date of the PO's '990 patent.

**Patent Owner's Non-Contingent Motion to Amend Claims (Paper 25)**. Again, the PO tried to get the PTAB to respond to the PO's claim that the references of Astrin, Breed, and Mostov does not antedate the PO's '990 patent, "Patent Owner's date of invention is at least as early as April 5, 2006 which is before the publication dates of Astrin and Mostov, and the filing date of Breed." With this disclosure in the Patent Owner's Non-Contingent Motion to Amend Claims, and the DHS/DOJ's unwillingness to correct their mistake, signifies the DHS/DOJ was willfully blind by intentionally keeping themselves unaware of facts that would render them liable or implicated. It can also be said that, at this point the DHS/DOJ knew, or should have known, the references of Astrin, Breed, & Mostov does not antedate the priority date of the PO's '990 patent.

In a motion to amend, the PO bears the burden to show a patentable distinction of each proposed substitute claim over the [unqualified] prior art. See 37 C.F.R. § 42.20(c). To that end, the Patent Owner sent the references of Astrin, Breed, and Mostov over to the USPTO for examination. The Examiner writes "[t]he references of petitioner DHS such as Exhibit 1005, 1169, US patent No. 5,959,529 and 7,148,484 and US application No. 13/701,449 do not relevant to the independent claims as a whole. They just had one or more elements in the claimed limitations but do not meet as a whole invention", which means, even if the references of Astrin, Breed, and Mostov were qualified prior art to the PO's '990 patent; according to the USPTO the claims at issue and the substitute claims are patentable and allowable. The PTAB refused to acknowledge the findings of the USPTO. This too was another opportunity for the DHS/DOJ to correct their mistake, but instead they chose to continue retaliating to take the PO's property.

Because the references of Astrin, Breed, and Mostov do not antedate the PO's '990 patent, the only thing that was accomplished in the DHS/DOJ's *inter partes review* is the demonstration of how the patents of Astrin, Breed, and Mostov are invalid because the subject matter is anticipated by the PO's '497 patent.

**Patent Owner's Response: "Motion to Amend" (Paper 26)**. Equally, in the Patent Owner's Response: "Motion to Amend", "Petitioner asserted that Astrin was available as prior art under 35 U.S.C. §102(b) as of November 9, 2006 upon publication. Petition for Inter Partes Review of U.S. Patent No. RE43,990 Under 35 U.S.C. §312 and 37 C.F.R. §42.104, page 2, lines 12-14. This date is after Patent Owner's priority date of April 5, 2006, and Astrin is therefore disqualified as prior art under 35 U.S.C. §102(b) and cannot be applied against claims 11, 74 or 81 because this publication date is not more than one year before Patent Owner's filing date. Petitioner asserted Mostov as prior art under 35 U.S.C. §102(b) as well and stated that this publication date was August 17, 2006. Petition, page 3, lines 1-3. As August 17, 2006 is not more than one year before, but is in fact after, Patent Owner's filing date of April 5, 2006, Mostov is likewise disqualified as prior art under 35 U.S.C. §102(b). Petitioner also asserted Breed as prior art under 35 U.S.C. §102(e) and stated that the filing date of the application of Breed was November 29, 2007. Petition, page 3, lines 4-6. Patent Owner's date of invention is at least as early as April 5, 2006 which is before the filing date of November 29, 2007 of Breed and likewise this reference is not prior art to claims 11, 74 and 81 under 35 U.S.C. §102(e). With this disclosure in the Patent Owner's Response: "Motion to Amend", and the DHS/DOJ's unwillingness to correct their mistake, signifies the DHS/DOJ was willfully blind by intentionally keeping themselves unaware of facts that would render them liable or implicated. It can also be said that, at this point the DHS/DOJ knew, or should have known, the references of Astrin, Breed, & Mostov does not antedate the priority date of the PO's '990 patent.

**ORDER Conduct of the Proceeding 37 C.F.R. § 42.5 (Paper 29)**. The PO never really understood how to amend claims to overcome 102-antipation objections when the references do not actually antedate the patent at issue: "Petitioner initiated the conference call … In its e-mail requesting the call, <u>Petitioner stated that Patent Owner filed both a contingent and a non-contingent Motion to Amend</u>, while only a single motion was

7

authorized by rule. See 37 C.F.R. § 42.121(a) (stating that a "patent owner may file one motion to amend a patent") … <u>We noted also that Mr. Golden had filed two papers with respect to the motion to amend—Paper 25, titled "Non-Contingent Motion to Amend," and Paper 26, titled "Motion to Amend Claims.</u>" <u>Mr. Golden stated that he was unclear as to how the Motion to Amend should be designated as a noncontingent motion to amend</u>, and thus, in an abundance of caution, he filed a separate paper designating the motion as non-contingent … As both papers collectively appear to meet the page limit for a motion to amend, we will treat them in the collective as a single motion to amend. Petitioner does not oppose … <u>Accordingly, it is ORDERED that Papers 25 and 26 will collectively be treated as a single, non-contingent, Motion to Amend</u>, with the proposed claim amendments being set forth in Exhibit 2020". It was the Judge who decided the PO's Motion to Amend was non-contingent; not the Patent Owner. [1]

***Patent Owner's Reply to Petitioner's Opposition to Patent Owner's Motion to Amend Claims (Paper 33)***. I. SUBSTITUTION CLAIMS ANTEDATES THE PRIOR ART … 3 – 15. "The amendment makes the prior art of Astrin and Breed unavailable because the subject matter antedates Astrin's publication date and Breed's application filing." Therefore, it is irrelevant that the original claims at issue was cancelled; relevant is the fact that "But For" the DHS/DOJ's "willful blindness", and the multiple opportunities the DHS/DOJ had to correct their mistakes, the IPR would not have been instituted or the IPR would have been withdrawn before the "Final Written Decision".

---

[1] The Defendant ("Government") is redirecting and narrowing the IPR-Based Unconstitutional Takings to Golden's cancellation of patent claims. The Defendant's never denied petitioning the PTAB as a "person" unauthorized to do so; never denied petitioning the PTAB with unqualified references; petitioning the PTAB as a way to retaliating against Plaintiff for filing a complaint against the Government; being "willfully blind" to the many, many times the Patent Owner / Golden tried to get the Government to respond to the PO's claim that the references did not antedate, and Golden's claim of an Unconstitutional IPR-Based "Taking".

***Final Written Decision 35 U.S.C. § 318(A) and 37 C.F.R. § 42.73 (Paper 35)***. First, it is recognized further that it was the PTAB Judges who selected the "Non-Contingent Motion to Amend with unqualified references that do not antedate the PO's

'990 patent, "On January 13, 2015, Patent Owner filed a Patent Owner Response (Paper 24 ("PO Resp.")), a Non-Contingent Motion to Amend (Paper 25 ("Non-Cont. Mot. to Amend")), and a Motion to Amend (Paper 26 ("Mot. to Amend"))" … "The Patent Owner Response contains arguments directed both to claims 11, 74, and 81 and to the proposed substitute claims. To the extent Patent Owner argues the patentability of claims 11, 74, and 81, those arguments are moot because Patent Owner has cancelled those claims. To the extent that Patent Owner wishes us to apply the arguments made regarding claims 11, 74, and 81 to the patentability of the amended claims or incorporate arguments regarding claims 154–156 from the Patent Owner Response into the Motion to Amend, we decline to do so … Patent Owner is precluded from incorporating arguments regarding the patentability of claims 11, 74, and 81 from the Patent Owner Response into the Motion to Amend to address how proposed substitute claims 154–156 are patentable". But yet, it was the PTAB Judges who combined the two motions and decided for the PO that the two motions will be considered a non-contingent motion to amend.

 Second, it was only in the "Final Written Decision" that the PTAB Judges addressed the references of Astrin and Breed as unqualified references that do not antedate original claims at issue and the substitute claims of the '990 patent, "We next consider Patent Owner's argument that Astrin, Mostov, and Breed are not prior art because the amended claims are entitled to the April 5, 2006 priority date. Mot. to Amend 2–7. Even accepting, for the sake of argument, that the substitute claims are entitled to this earlier priority date, at the very least, Mostov remains prior art under 35 U.S.C. § 102(e) because Mostov's non-provisional filing date is January 30, 2006. Ex. 1003, at [22]". The DHS/DOJ should not have petitioned with Astrin and Breed, and the PTAB should not have instituted with Astrin and Breed, which resulted in the unconstitutional "takings" of the Patent Owner's property.

 Third, when the PTAB changed the anticipation basis of Mostov from that of 35 U.S.C. § 102(b) to that of 35 U.S.C. § 102(e), the PTAB literally instituted a new trial, "Mostov remains prior art under 35 U.S.C. § 102(e) … The fact that we did not institute this proceeding on Mostov does not mean it is no longer relevant to the patentability of the substitute claims". The PO demonstrated how Mostov with an anticipation basis of 102(b) do not antedate the priority date of the '990 patent. If the PTAB was interested in

9

changing the anticipation basis of Mostov, the PTAB should have done so when the PTAB instituted the case to trial. Not after the PO has defended his original claims at issue (i.e., 11, 74, & 81 of the '990 patent) against the unqualified patent references of Astrin and Breed.

   ***Patent Owner's Request for Rehearing (Paper 36)***. With the following disclosure in the Patent Owner's Request for Rehearing", and the DHS/DOJ's unwillingness to correct their mistake, signifies the DHS/DOJ was willfully blind by intentionally keeping themselves unaware of facts that would render them liable or implicated. Email sent by the PO on October 2, 2015:

> "Mostov, does not qualify as prior art to the Patent Owner's priority date of April 5, 2006 because Mostov was not made public (in a publication) until August 17, 2006. For this reason, the Patent Owner is asking the Board to reverse the 102(e)-anticipation rejection because the Petitioner never filed a 102(e) objection and the Patent Owner was never allowed to respond to a 102(e) objection."

> "On page 26 of the "Final Written Decision" Mostov was re-entered because the Board, "consider Mostov still to be relevant to the patentability of the claims". The Board also states, "at the very least, Mostov remains prior art under 35 U.S.C. 102(e). It should be noted the Petitioner entered the Mostov patent into record under 35 U.S.C. 102(b) and not under 35 U.S.C. 102(e). (IPR Petition; content page and pages 3, 4, & 29). The Patent Owner doesn't recall ever having to respond to a motion made by the Petitioner to change its objection from a 102(b) objection to a 102(e) objection. The Patent Owner is totally unaware of any PTAB rule that would allow for such a change without the Patent Owner having a chance to respond to the amendment to the Petition."

> "Mostov's patent provisional filing date is January 28, 2005. The Patent Owner's "Disclosure Document" filing date is November 26, 2004. Therefore, any subject matter Mostov has outlined in his claims, according to the Federal Circuit decision above, is anticipated by the Patent Owner because the Patent Owner's "Disclosure Document" antedates Mostov's patent provisional filing date. (Attached is a copy of the "Disclosure Document" submitted to the USPTO for the benefit of the Patent

>Owner that displays a USPTO stamped filing date and a stamped document no. of 565732 used for reference."

The DHS/DOJ knew, or should have known after the Patent Owner repeatedly "begged" the Agencies not to take the property of Golden, that the references of Astrin, Breed, & Mostov do not antedate the priority date of the Patent Owner's '990 patent.

The PTAB Judges in *Department of Homeland Security v. Larry Golden*, Case No. IPR2014-00714, were intimidated and forced to act under duress, by the DHS and the DOJ, to conduct a telephone conference call without the DHS & DOJ being present in an effort to convince Patent Owner to change his current motion to amendment to that of a non-contingent motion to amend which requires the cancellation of claims. In an effort to cease the takings of Plaintiff's patent claims, the Patent Owner never decided or agreed to an amendment where the Patent Owner kept the asserted patent claims or a non-contingent amendment which requires the cancellation of the asserted patent claims. It was the Judge who was intimidated and forced to act under duress who decided the PO's Motion to Amend was non-contingent; not the Patent Owner.

>"Petitioner initiated the conference call … In its e-mail requesting the call, Petitioner stated that Patent Owner filed both a contingent and a non-contingent Motion to Amend, while only a single motion was authorized by rule. See 37 C.F.R. § 42.121(a) (stating that a "patent owner may file one motion to amend a patent") … We noted also that Mr. Golden had filed two papers with respect to the motion to amend—Paper 25, titled "Non-Contingent Motion to Amend," and Paper 26, titled "Motion to Amend Claims." Mr. Golden stated that he was unclear as to how the Motion to Amend should be designated as a noncontingent motion to amend, and thus, in an abundance of caution, he filed a separate paper designating the motion as non-contingent … As both papers collectively appear to meet the page limit for a motion to amend, we will treat them in the collective as a single motion to amend. Petitioner does not oppose … Accordingly, it is ORDERED that Papers 25 and 26 will collectively be treated as a single, non-contingent, Motion to Amend, with the proposed claim amendments being set forth in Exhibit 2020". ORDER Conduct of the Proceeding 37 C.F.R. § 42.5 (Paper 29)

Two days after the CFC Judge in *Golden v. USA* Case No. 13-307C denied on 11/30/2016 the Government's motion to dismiss under 12(b)(1) and 12(b)(6); in a telephone conference call

on 12/02/2016 the Judge in *Golden v. USA* Case No. 13-307C was intimidated and forced to act under duress, by three (3) attorneys representing the Department of Justice (DOJ) and three (3) attorneys representing the Department of Homeland Security (DHS) to first, drop Plaintiff's alleged infringement claim against the National Institute of Justice (NIJ) because the stated she has never heard of the NIJ [NIJ is the research, development and evaluation agency of the U.S. Department of Justice]; and second, to allow the DOJ & DHS another chance at having the same alleged infringement claims, alleged against the same government agencies, who is allegedly infringing the same patent claims, another chance at having Plaintiff's alleged government infringement claims dismissed under 12(b)(1) and 12(b)(6). The Judge was intimidated and forced to act under duress to make those decisions without a motion from the Government or explanation on why the Court's opinion on 11/30/2016 needed to be reversed.

      On March 29, 2018, the CFC Judge in *Golden v. USA* Case No. 13-307C, was intimidated and forced to act under duress, by the Department of Justice (DOJ) and the Department of Homeland Security (DHS) to cancel 61 of 72 alleged infringement claims against the Government because the use of the smartphones [consumer devices] were purely incidental. When the DHS S&T Directorate released the DHS S&T BAA07-10 *Cell-All Ubiquitous Biological and Chemical Sensing* solicitation it was for the development of a mobile device [i.e., cell phone] capable of CBRNE *ubiquitous* [in all places at all times] sensing. The DHS contracted Qualcomm as the prime contractor responsible for the assembly of the new sensing device. Qualcomm was responsible for the new GPS and Tracking needed for the new device; responsible for the new safety mechanisms of a disabling lock, biometric authentication, and fear-field communication; the integration methods; the reporting methods; miniaturized sensors; and the various sensing methodology for chemical, biological, radiological, nuclear, and explosives. DHS "authorized and consented" to the devices' being manufacture by, or for the government; a new novel mobile device [i.e., cell phone] capable of CBRNE *ubiquitous* [in all places at all times] sensing. Therefore, the use by the government of the consumer devices named in Golden's alleged patent infringement claims, was not "purely incidental".

      The CFC Judge in *Golden v. USA* Case No. 13-307C, was intimidated and forced to act under duress, by the Department of Justice (DOJ) and the Department of Homeland Security (DHS) to drop, without explanation, Qualcomm as a third-party contractor. Qualcomm was the prime third-party contractor for the DHS S&T BAA07-10 *Cell-All Ubiquitous Biological and*

*Chemical Sensing* initiative. Qualcomm was responsible for four essential components for the new cell-phone sensing device: 1- the mobile device, 2- the CBRNE detectors/sensors, 3- the central processing units (CPUs), and 4- the wireless cellular modems. The DOJ & DHS omitted Qualcomm as a third-party contractor [only after serving Qualcomm notice to appear to protect its interest] and introduced a defense that the mobile devices [without patents] are the property of the private parties, and no sensing element identified was native to the manufacture of the private parties' devices, the CPUs are sensors for CBR detection, and the essential CPUs inclusion only enlarged the case. This type of disparate treatment only happens to African American inventors.

In a related case in the Northern District of California, *Federal Trade Commission v. Qualcomm Incorporated*, NDC Case No. 17-CV-00220-LHK, the Court found that it was an anticompetitive practice for Qualcomm to collect a 5% royalty on the price of each handset, i.e., smartphone sold, without having the patent rights, a license, or authorization to do so. Qualcomm has full knowledge that the African American inventor, Golden owns the patent rights to collect a royalty on the price of each handset, i.e., smartphone sold. When the case was appealed in *FTC v. Qualcomm*, Ninth Circuit US Court of Appeals No. 19-16122 (9th Cir. 2020), the Department of Justice (DOJ) intervene by threatening the withdrawal of jurisdiction from the Northern District of California to the U.S. Court of Federal Claims. The DOJ intervened to say that Qualcomm is doing 5G work that is vital to national security [implied] under contract with the Department of Energy. The DOJ raised this issue against a sister Federal Agency in the Defense of Qualcomm and against Golden. Which means Qualcomm can commit antitrust crimes while performing work for the Government because the Government has not consented to being sued for antitrust violations:

> "The United States [Department of Energy] as a sovereign is immune from suit unless it unequivocally consents to being sued. The United States Supreme Court in *Price v. United States* observed: "It is an axiom of our jurisprudence." It makes no difference which party was successful in the district court [Federal Trade Commission], for, if timely appeal is taken [Ninth Circuit], the case remains a "pending suit" which must be dismissed upon withdrawal of jurisdiction [withdrawal of jurisdiction from the Northern District of California to the U.S. Court of Federal Claims]. See *Gulf Refining Co. v. United States*, 269 U.S. 125, 137 (1925); *Gulf, Col. & S.F. Ry. v. Dennis*, 224 U.S. 503, 506 (1912); *United States v. The Schooner Peggy*, 1 Cranch (5 U.S.) 102, 110 (1801)."

The CFC Judge in *Golden v. USA* Case No. 13-307C, was intimidated and forced to act under duress, by the Department of Justice (DOJ) and the Department of Homeland Security (DHS) to falsely apply the six-year "statute of limitations doctrine" for litigating Golden's "Unconstitutional IPR-Based "Takings" claim as being time barred.

The "Takings" of Golden's property started on **05/01/2014** when the two Defendants in the lead case, the DHS & DOJ, who are not "persons" authorized to petition for *inter partes review* (IPR) at the PTAB to invalidate patents; submitted a petition for *inter partes review* to the PTAB to invalidate Golden's patent with three unqualified patent references, eighteen unqualified publications, and one unqualified declaration. The only exception is that the Patent Owner is an African American inventor (Golden).

On **Oct. 1, 2015** the PTAB Judges in *Department of Homeland Security v. Larry Golden*, Case No. IPR2014-00714, were intimidated and forced to act under duress, to issue a Final Written Decision invalidating Golden's substitute claims 154, 155, & 156. There's no law, provision, or statute available for invalidating patent claims (i.e., independent, dependent, or substitute) under a 102-anticipation basis, with references that do not antedate the Patent Owner's patents' documented priority date. The only exception is that the Patent Owner is an African American inventor (Golden).

On **Jan. 29, 2019** the PTAB Judges in *Department of Homeland Security v. Larry Golden*, Case No. IPR2014-00714, were intimidated and forced to act under duress, to consolidate Golden's IPR-Based Unconstitutional "Takings" (Case No. 19-104C), with the lead case (Case No. 13-307C). "On January 17, 2019, plaintiff filed a complaint alleging the government has taken several patents without paying just compensation in violation of the Fifth Amendment … Because this action shares the identical questions of law and fact with Golden, No. 13-307C, and it is in the interest of judicial economy to consider them together, it is proper to consolidate the cases. ***Golden v. United States, 19-104C, therefore is consolidated with Golden v. United States, 13-307C***."

According to the Federal Circuit in *Golden v. US* CAFC Case No. 19-2134 Dkt. 37 Filed ***04/10/2020***, "Golden may argue that, in view of *Return Mail*, the cancellation of the patent claims [at least the substitute claims] in an *inter partes review* initiated by the government could be considered an unconstitutional taking under the Fifth Amendment."

In Golden's Motion for Leave to File a Motion for Summary Judgement *Larry Golden v. United States*, COFC Case 1:13-cv-00307-EGB Document 196 Filed *11/03/20*, Golden continued his efforts to get the DOJ and the COFC Court to address Golden's Unconstitutional IPR-Based Takings claim. Golden could never be time barred when the Unconstitutional IPR-Based Takings Claim was still pending in the lead case *Golden v. US*, No. 13-307C that only ended *11/10/2021*.

The statute of limitations is being falsely applied because within the six-year period following the PTAB final written decision *(Oct. 1, 2015)*; Golden filed in the Claims Court an Unconstitutional IPR-Based "Takings" of Property claim on *01/17/2019* (Case No. 19-104C). On *01/29/2019* the Trial Court consolidated the cases in the interest of judicial economy (Case No. 19-104C and the lead Case No. 13-307C). Golden filed for Summary Judgement on the IPR-Based Unconstitutional "Takings" claim on *11/03/2020*. The Trial Court dismissed the lead case COFC 13-307C on *11/10/2021*, without adjudicating Golden's "Unconstitutional IPR-Based "Takings" claim.

The "Takings" continued up to the day the Trail Court, that included the same two Defendants (DHS & DOJ), dismissed Golden's lead case COFC 13-307C on November 10, 2021 without adjudicating Golden's "Unconstitutional IPR-Based "Takings" claim. Therefore, because this case has never been litigated, the case cannot be barred by *Jes Judicata*.

## CONCLUSION

Judicial misconduct occurs when a Judge acts in ways that are considered unethical or otherwise violate the Judge's obligations of impartial conduct. It is Plaintiff's argument that Judge Bruggink is being intimidated by the DOJ to act under duress.

Otherwise, the Judge Bruggink's actions can be classified as judicial misconduct, which include: conduct prejudicial to the effective and expeditious administration of the business of the Court (as an example: "falsification of facts" or complicit with the "falsification of facts" at summary judgment or final judgement)

Section 28 U.S.C. § 455 provides in relevant part: (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned. (b) He shall also disqualify himself in the following circumstances: (1) [W]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding … 28 U.S.C. § 455. "'[A]

judge must recuse [himself] if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality.'" *United States v. Hartsel*, 199 F.3d 812, 820 (6th Cir. 1999) (quoting *Hughes v. United States*, 899 F.2d 1495, 1501 (6th Cir. 1990)) (modifications in original).

                                          Sincerely,

                                          s/ *Larry Golden*

                                          Larry Golden, *Pro Se* Plaintiff

                                          740 Woodruff Rd., #1102

                                          Greenville, SC 29607

                                          (H) 8642885605

                                          Email: atpg-tech@charter.net

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 4th day of August, 2023, a true and correct copy of the foregoing "Plaintiff's Reply in Support of Plaintiff's Motion for Disqualification", was served upon the following Defendant by priority "express" mail and via email:

Grant D. Johnson
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC 20530
Grant.D.Johnson@usdoj.gov
(202) 305-2513

s/ *Larry Golden*

Larry Golden, Pro Se
740 Woodruff Rd., #1102
Greenville, South Carolina 29607
atpg-tech@charter.net
864-288-5605