Case No: <u>1:23-cv-00811-EGB</u>

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Larry Golden, Pro Se Plaintiff

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

(H) 864-288-5605

(P) 864-992-7104

(E) atpg-tech@charter.net

| | |
|---|---|
| LARRY GOLDEN,<br><br>    *Plaintiff*,<br><br>    V.<br><br>THE UNITED STATES,<br><br>    *Defendant*. | **Patent Infringement**<br><br><br>August 9, 2023 |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## MOTION TO DISMISS

The Federal Circuit in *FastShip, LLC v. U.S.*, "[W]e interpret "manufactured" in § 1498 [] such that a product is "manufactured" when it is made to include each limitation of the thing invented and is therefore suitable for use. Of what Golden invented, not the DoD/DTRA.

A 'person having ordinary skill in the art' to which the claimed subject matter pertains would, of necessity have the capability of understanding the scientific and engineering principles applicable to the pertinent art; and know, it is the thing Golden invented, not the DoD/DTRA.

This case is bound by vertical stare decisis and barred by issue preclusion.

## THE U.S. COURT OF FEDERAL CLAIMS IS BOUND BY THE DECISIONS OF THE U.S. COURT OF APPEALS FOR THE FEDERAL CIRCUIT

### *Vertical Stare Decisis*

The United States Court of Appeals for the Federal Circuit is a federal court that has special importance in patent law. The Federal Circuit does not have jurisdiction over a particular region.  Instead, it has jurisdiction over all appeals in cases that "arise under" the patent laws. The Federal Circuit's jurisdiction over appeals in patent cases is exclusive.  Other circuit courts cannot review decisions in those cases.

Congress created the Federal Circuit in 1982 to be a court with specialized expertise in patent law.  In giving it exclusive jurisdiction over patent cases, Congress aimed to ensure that the interpretation of the patent laws, and applicable legal precedent, would be uniform throughout the nation, and not vary among regional circuits.

Consistent with that, the Federal Circuit has developed a large body of precedent governing patent cases: how to interpret patent claims, how infringement must be proved, how invalidity must be established, and how damages must be calculated.  Successful patent litigation in the district courts requires diligently the following of the Federal Circuit's pronouncements on those issues.

Vertical stare decisis binds lower courts to follow strictly the decisions of higher courts within the same jurisdiction (e.g., the U.S. Court of Federal Claims must follow the decisions of the U.S. Court of Appeals for the Federal Circuit). The Supreme Court defines vertical stare decisis as the doctrine, "a lower court must strictly follow the decision(s) handed down by a higher court within the same jurisdiction".

A court engages in vertical stare decisis when it applies precedent from a higher court. For example, if the United States Court of Federal Claims adhered to a previous ruling from the United States Court of Appeals for the Federal Circuit, in *Larry Golden v. Google LLC*; Case No. 22-1267, that would be vertical stare decisis.

The Federal Circuit on 09/08/2022, in *Larry Golden v. Google LLC*; Case No. 22-1267 — "VACATED AND REMANDED" the relevant Case No: 22-1267 Document 15; back to the District Court "to be filed and request service of process". The Federal Circuit determined the complaint, "includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" … "in a relatively straightforward manner" … and that the [Circuit] "express no opinion as to the adequacy of the complaint or claim chart except that it is not facially frivolous."

Three-Judge Panel: "DISCUSSION. 'Under the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), a court must dismiss a complaint if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 … [T]his standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (citation omitted). A plaintiff must allege facts that give rise to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted) … this court has explained that a plaintiff … must plead "'enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged."

"Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 … It [claim chart] attempts [] to map claim limitations to infringing product features, and it does so in a relatively straightforward manner …[W]e conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart. Mr. Golden

has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart….”

Vertical Stare Decisis bars the Government from challenging, and this Court from overturning, the Federal Circuit's ruling: "the complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" … 'in a relatively straightforward manner'"

Below is a list of "sensor types supported by the 'Android' platform, that can be found in the first original complaint filed in the U.S. District Court for the District of South Carolina – Greenville Division. The alleged facts were included in the original complaint because Plaintiff knew and understood he "must allege facts that give rise to "more than a sheer possibility that the Defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).

On appeal in *Larry Golden v. Google LLC*; Case No. 22-1267, the Federal Circuit determined Plaintiff has "pled enough fact[s] to raise a reasonable expectation that discovery will reveal that the Defendant is liable for the misconduct alleged."

Therefore, according to the doctrine of "*Vertical Stare Decisis*" the Government is barred from challenging, and this Court is barred from relitigating the specifications of the Google Pixel 5 and the Android Team Awareness Kit (ATAK), that was decided as being nonfrivolous in U.S. Court of Appeals for the Federal Circuit: See the sensor types for "Android" listed below:

---

### SENSOR TYPES SUPPORTED BY THE "*ANDROID*" PLATFORM

- ❖ **BIOMETRICS**: Biometric factors allow for secure authentication on the Android platform. The Android framework includes face and fingerprint biometric authentication. Android can be customized to support other forms of biometric authentication (such as Iris).

- ❖ **DISABLING LOCK MECHANISM:** Google's Android operating system features a lock mechanism to secure your phone, known as pattern lock. When setting the pattern, you must drag your finger along lines on the screen between different nodes. Afterward, to unlock the phone, you'll need to replicate the pattern drawn. If you fail to solve the pattern too many times, the phone locks and cannot be unlocked without logging into the associated Google account. If you can't log in, you'll have to employ some other methods to restore control of your phone.

- ❖ **CHEMICAL, BIOLOGICAL, RADIOLOGICAL, AND NUCLEAR (CBRN) DETECTION:** Through collaboration and innovation, the Defense Threat Reduction Agency has integrated its powerful, hazard-awareness-and-response tools into the *Android Tactical Assault Kit (or the Android Team Awareness Kit, ATAK)*. ATAK is a digital application available to warfighters throughout the DoD. Built on the Android operating system, ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins.

- ❖ **HEART RATE**: *Android Team Awareness Kit, ATAK* provides a single interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents.

- ❖ **NEAR FIELD COMMUNICATION (NFC)**: Pixel™, Phone by Google - Turn NFC on/off. Near Field Communication (NFC) allows the transfer of data between devices that are a few centimeters apart, typically back-to-back. NFC must be turned on for NFC-based apps (e.g., Tap to Pay) to function correctly. NFC is a set of short-range wireless technologies, typically requiring a distance of 4cm or less to initiate a connection. NFC allows you to share small payloads of data between an NFC tag and an Android-powered device, or between two Android-powered devices. Tags can range in complexity.

- ❖ **WARFIGHTERS:** The U.S. armed forces and their interagency and coalition partners value *Android Team Awareness Kit, ATAK* and the common operating picture it provides. DTRA continues to develop CBRN-specific plug-in capabilities to support warfighters on the battlefield.

_____

The Federal Circuit has determined Golden has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 … pled "'enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged". The decision cannot be overturned by the lower Court of Federal Claims.

In the Federal Circuit's language, "a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189", indicates a determination has been made on direct infringement, either literally or under the doctrine of equivalents.

Therefore, when the Federal Circuit states, ""express no opinion as to the adequacy [the state or quality of being adequate] of the complaint or claim chart except that it is not facially frivolous", means the Circuit is not expressing an opinion on whether the direct infringement is literal direct infringement or direct infringement under the doctrine of equivalents.

"Literal infringement" means that each and every element recited in a claim has identical correspondence in the allegedly infringing device or process. "Under the doctrine of equivalents, a product or process that does not literally infringe . . . the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention.'" *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp*., 149 F.3d 1309, 1315 (Fed. Cir. 1998)

For an infringement analysis & litigation, claim charts help confirm or dis-confirm that each and every limitation of the claim is present in a product, service, or standard. An Evidence-of-Use (EoU) or Infringement Chart shows how a product or process accused of infringement contains each claim element to satisfy the 'all elements test' for infringement.

Below, (*Figure 1*) illustrates how the Federal Circuit in *Golden v. Google* examined each and every product element of the Google Pixel 5 smartphone to the claim limitations of claim 5 of the '287 patent; claim 23 of the '439 patent; and claim 1 of the '189 patent. The chart below is a comparison of a *smartphone* elements evaluated by the Federal Circuit in *Golden v. Google*.

*Figure 1*

| Google Pixel 5 Smartphone | Vertical Stare Decisis (Federal Circuit) |
|---|---|
| **Smartphone** [A] portable computer device that combines mobile telephone functions and computing functions [H]ave central processing units (CPUs), similar to those in computers. The CPU is typically integrated in a system-on-a-chip (SoC) application processor. | *Golden v. Google* Case No. 22-1267 the complaint includes a detailed claim chart mapping features of an accused product, [] **Smartphone**, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" … 'in a relatively straightforward manner'" |
| CPU: Octa-core (1 × 2.4 GHz Kryo 475 Prime & 1 × 2.2 GHz Kryo 475 Gold & 6 × 1.8 GHz Kryo 475 Silver) System-on-a-chip: Qualcomm Snapdragon 765G | *Golden v. Google* Case No. 22-1267 the complaint includes a detailed claim chart mapping features of an accused product, [] **Smartphone CPU (Qualcomm Snapdragon (SoC))**, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" … 'in a relatively straightforward manner'" |
| Ambient Temperature sensor supported by the Android platform. Measures the ambient room temperature in degrees Celsius (°C). Monitoring air temperatures. Monitoring air temperatures. | *Golden v. Google* Case No. 22-1267 the complaint includes a detailed claim chart mapping features of an accused product, [] **Smartphone Temperature Sensor**, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" … 'in a relatively straightforward manner'" |

| | |
|---|---|
| Gravity sensor supported by the Android platform. Measures the force of gravity in m/s2 that is applied to a device on all three physical axes (x, y, z). Motion detection (shake, tilt, etc.). | *Golden v. Google* Case No. 22-1267 the complaint includes a detailed claim chart mapping features of an accused product, [] **Smartphone Gravity Sensor**, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" … 'in a relatively straightforward manner'" |
| Light sensor supported by the Android platform. Measures the ambient light level (illumination) in lx. Controlling screen brightness. Screen: 6-inch flexible OLED display at 432 ppi | *Golden v. Google* Case No. 22-1267 the complaint includes a detailed claim chart mapping features of an accused product, [] **Smartphone Light Sensor**, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" … 'in a relatively straightforward manner'" |
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | *Golden v. Google* Case No. 22-1267 the complaint includes a detailed claim chart mapping features of an accused product, [] **Smartphone Bluetooth Sensor**, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" … 'in a relatively straightforward manner'" |
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | *Golden v. Google* Case No. 22-1267 the complaint includes a detailed claim chart mapping features of an accused product, [] **Smartphone NFC Sensor**, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" … 'in a relatively straightforward manner'" |

| | |
|---|---|
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | *Golden v. Google* Case No. 22-1267 the complaint includes a detailed claim chart mapping features of an accused product, [] **Smartphone GPS Connection**, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" … 'in a relatively straightforward manner'" |
| Google's Android operating system features a lock mechanism to secure your phone, known as pattern lock. To set, drag your finger along lines on the screen. To unlock the phone, replicate the pattern drawn. If you fail to solve the pattern too many times, the phone locks and cannot be unlocked without logging into the associated Google account.<br><br>Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone. | *Golden v. Google* Case No. 22-1267 the complaint includes a detailed claim chart mapping features of an accused product, [] **Smartphone Locking Mechanism for Lock, Unlock, Disabling Lock** to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 … 'in a relatively straightforward manner'" |
| Pixel phones use USB-C with USB 2.0 power adapters and cables. To charge your phone with a USB-A power adapter, use a USB-C to USB-A cable. | *Golden v. Google* Case No. 22-1267 the complaint includes a detailed claim chart mapping features of an accused product, [] **Smartphone Power Source** to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 … 'in a relatively straightforward manner'" |
| BIOMETRICS: Biometric factors allow for secure authentication on the Android platform. The Android framework includes face and fingerprint biometric authentication. Android can be customized to support other forms of biometric authentication (such as Iris). | *Golden v. Google* Case No. 22-1267 the complaint includes a detailed claim chart mapping features of an accused product, [] **Smartphone Biometric Authentication** to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 … 'in a relatively straightforward manner'" |

| | |
|---|---|
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents. | *Golden v. Google* Case No. 22-1267 the complaint includes a detailed claim chart mapping features of an accused product, [] **Smartphone Android Operating System** to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 … 'in a relatively straightforward manner'" |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *Golden v. Google* Case No. 22-1267 the complaint includes a detailed claim chart mapping features of an accused product, [] **Smartphone ATAK for CBRN Plug-ins** to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 … 'in a relatively straightforward manner'" |
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | *Golden v. Google* Case No. 22-1267 the complaint includes a detailed claim chart mapping features of an accused product, [] **Smartphone Wi-Fi Connection** to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 … 'in a relatively straightforward manner'" |
| Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | *Golden v. Google* Case No. 22-1267 the complaint includes a detailed claim chart mapping features of an accused product, [] **Smartphone Lock/Unlock Mechanism and Smartphone ATAK for CBRN Plug-ins** to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 … 'in a relatively straightforward manner'" |

| | |
|---|---|
| Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | *Golden v. Google* Case No. 22-1267 the complaint includes a detailed claim chart mapping features of an accused product, [] **Smartphone Lock/Unlock Mechanism and Smartphone ATAK for CBRN Plug-ins** to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 … 'in a relatively straightforward manner'" |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *Golden v. Google* Case No. 22-1267 the complaint includes a detailed claim chart mapping features of an accused product, [] **Smartphone ATAK for CBRN Plug-ins** to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 … 'in a relatively straightforward manner'" |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *Golden v. Google* Case No. 22-1267 the complaint includes a detailed claim chart mapping features of an accused product, [] **Smartphone ATAK for CBRN Plug-ins** to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 … 'in a relatively straightforward manner'" |

Vertical stare decisis, or vertical precedent, is the obligation of the United States Court of Federal Claims to follow the decisions of the United States Court of Appeals for the Federal Circuit that falls within the hierarchical structure. Vertical stare decisis and precedent, are a matter of hard law, not a matter of policy.

Something analogous happens with vertical stare decisis: it is not hard law because it sanctions departure; rather it is because of its hard nature that vertical stare decisis brings with it, or needs, a sanction against non-compliance. So, with vertical stare decisis it is true that in the absence of compliance by the Federal Claims Court, the Federal Circuit will likely overturn the Federal Claims Court's decision. This works as a kind of sanction against the non-complying court. Vertical stare decisis is, indeed, afforded binding weight.

## THE GOVERNMENT'S DEFENSE IS BARRED BY "ISSUE PRECLUSION"

In *Golden v. Google* CAFC Case No. 22-1267, the case was Vacated and Remanded back to the District Court for the following reason:

"In the Google case, the district court again concluded that Mr. Golden's complaint was frivolous. Here, however, Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189. The district court discounted this claim chart because it "contains the exact same language as the claim charts previously rejected by the Federal Circuit [in the 2019 case], although Google Pixel 5 Smartphone appears in the far-left column instead of Apple." Dist. Ct. Op. at 4. But to the extent that the chart includes the "exact same language" as previously rejected charts, it is simply the language of the independent claims being mapped to. The key column describing the infringing nature of the accused products is not the same as the complaint held frivolous in the 2019 case. It attempts—whether successfully or not—to map claim limitations to infringing product features, and it does so in a relatively straightforward manner. We conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart. Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart. On remand, the district court should allow the

complaint to be filed and request service of process [] … We express no opinion as to the adequacy of the complaint or claim chart except that it is not facially frivolous."

The Defendants in the case asked the three Circuit Judges of Dyk, Taranto, and Stoll to affirm dismissal of Plaintiff's case for lack of subject matter jurisdiction under FRCP Rule 12(b)(1); for failure of the complaint to state a claim on which relief can be granted under FRCP 12(b)(6); and because the case is "frivolous". The Circuit Judges reviewed the District Court case and decided against it.

What that means is, the Defendant (Government the United States) is collateral estoppel from re-litigating the issue of subject matter jurisdiction under FRCP Rule 12(b)(1); failure of the complaint to state a claim on which relief can be granted under FRCP 12(b)(6); the number of times Plaintiff has file cases; the cause of actions of those cases, claim chart format; and "frivolousness"; because the issues were actually litigated and conclusively resolved by the three Circuit Judges of Dyk, Taranto, and Stoll in *Golden v. Google* CAFC Case No. 22-1267.

Issue preclusion, or collateral estoppel, precludes a party [Government] from relitigating an issue actually decided in a prior case and necessary to the judgment. In this collateral estoppel case, the issue at the heart of the claim ["infringement of the independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189"] has already been raised and litigated in *Golden v. Google* CAFC Case No. 22-1267.

Issue preclusion, also called collateral estoppel, means that the valid and final judgment in *Golden v. Google* Case No. 22-1267 [alleged infringement by the private entity Google, LLC under 35 U.S. Code § 271(a)] binds the defendant in subsequent actions [alleged infringement by the Defense Threat Reduction Agency "the Government" under 28 U.S. Code § 1498(a)], on the different causes of action between them as to same issues actually litigated and essential to the

judgment in the first action. Collateral estoppel does not require the same parties from the prior case to be in the subsequent case.

According to law, any and all defense pleadings of "preclusion" the Government presents in this case to prejudice Plaintiff, after the *OPINION* filed on 09/08/2022 in *Golden v. Google* Case No. 22-1267, should be disregarded and stricken because of "issue preclusion" or "collateral estoppel".

## A PERSON SKILLED IN THE ART WOULD KNOW THE DoD/DTRA IS RESPONSIBLE FOR DEVELOPING THE SOFTWARE THAT CAUSES THE INFRINGEMENT

The Tactical Assault Kit (TAK)—a mapping system with a plugin architecture—has seen success across the Department of Defense (DoD) and Department of Homeland Security (DHS), where operators must routinely execute missions in spectrum denied environments. [nonincidental use by the Government]

The Defense Threat Reduction Agency (DTRA) leveraged TAK for enhanced CBRNE situational awareness with the goal of protecting military and civilian populations from intentional or incidental chemical or biological threats and Toxic Industrial Chemicals/Materials (TIC/TIM) hazards. [the TAK was made to include each limitation of Golden's invention]

In *FastShip, LLC v. United States*, 892 F.3d 1298 (Fed. Cir. 2018)) "[T]he Court of Federal Claims construed the relevant claim terms and granted the government partial summary judgment, finding that the LCS-3 ship was not "manufactured" by or for the government within the meaning of Section 1498" … The Federal Circuit affirmed and determined that the meaning of "manufactured" in Section 1498 was a matter of first impression. The Federal Circuit interpreted "manufactured" under its plain meaning, holding that "a product is 'manufactured' when it is made to include each limitation of the thing invented and is therefore suitable for use."

14

Under a Broad Agency Announcement from the Joint Science and Technology Office (JSTO) Digital Battlespace Management Division, DTRA fund the development of ATAK, WinTAK, and WebTAK compatible versions of existing decision support tools for chemical and biological warning and reporting, hazard prediction, and consequence assessment, which caused the development of iTAK. [the iTAK, ATAK, and WinTAK was developed in accordance to Golden's "product grouping" strategies to enable the integration of hardware and software]

> *Golden's Patent Specifications*: "It is another objective of the present invention to provide a multi sensor detection [] system for preventing terrorist activity by using products grouped together by common features in several product groupings such as design similarity, similarity in the presentation of security problems and similarity with regard to the presentation of solutions to preventing terrorist… Still yet a further objective of the present invention is to provide a multi sensor detection [] system that can be implemented by business or government at a minimum cost by organizing the products to be protected into product grouping categories… Product grouping 2 (sensors) include, but are not limited to, chemical, biological, radiological, explosive and nuclear detectors, motion sensors, door sensors, [] biometric sensors, [] detection of humans… Product grouping 4 (monitoring & communication devices) include, but are not limited to, mobile communication devices, mobile communication units, portable communication devices, [] monitoring sites, monitoring terminals, web servers, desktop PCs, notebook PCs, laptops, satellite cell phones, cell phones, [] PDAs, [] and [] handhelds …
> Product grouping 7 (authorized person) include, but are not limited to, owner, pilot, conductor, captain, [] airport security, police, highway patrol, security guard, military personnel, HAZMAT, CIA, FBI, Secret Service, port security personnel, border security personnel, first responders, [] terminal personnel.

## iTAK

The iPhone is a line of smartphones produced by Apple Inc. that use Apple's own iOS mobile operating system. The first-generation iPhone was announced by then-Apple

CEO Steve Jobs on January 9, 2007. Since then, Apple has annually released new iPhone models and iOS updates. As of November 1, 2018, more than 2.2 billion iPhones had been sold.

iOS (formerly iPhone OS) is a mobile operating system developed by Apple Inc. exclusively for its hardware. It is the operating system that powers the company's mobile devices.

**iTAK** was specifically designed for Apple smartphones. The iTAK is a software component that adds a specific feature to an existing program. When the iTAK supports CBRNE plug-ins, it enables customization. It enables third-party developers [Draper Laboratories] to extend the application with CBRNE plugins.

The "product grouping" strategy for ubiquitous iTAK CBRNE sensing is limited to the 111 Apple smartphone models that are covered under the Apple brand. (gsmarena.com)

## ATAK

Android is a mobile operating system based on a modified version of the Linux kernel and other open-source software, designed primarily for mobile devices as smartphones. Android is developed by a consortium of developers known as the Open Handset Alliance, though its most widely used version is primarily developed by Google. It was unveiled in November 2007, with the first commercial Android device, the HTC Dream, being launched in September 2008. At its core, the operating system is known as Android Open-Source Project (AOSP) and is free and open-source software (FOSS). Over 70 percent of smartphones based on Android Open-Source Project run Google's ecosystem (which is known simply as Android)

**ATAK** was specifically designed for Android smartphones. The ATAK is a software component that adds a specific feature to an existing program. When the ATAK supports CBRNE

plug-ins, it enables customization. It enables third-party developers [Draper Laboratories] to extend the application with CBRNE plugins.

The "product grouping" strategy for ubiquitous ATAK CBRNE sensing include nearly 1,300 brands that have produced over 24,000 distinct Android devices (android.com). The Samsung brand has 1,361 devices; the Google brand has 24 devices; the LG brand has 667 devices; and the Asus/Qualcomm brand has 200 devices (gsmarena.com/makers.php3)

## WinTAK

Microsoft's Windows has always dominated the desktop PC, laptop, and tablet operating system (OS) space globally, as the operating system is widely available with many PC manufacturing partners such as Dell, HP, and Samsung. Microsoft Windows was the dominant desktop operating system (OS) worldwide as of January 2023, with a share of just over 74%.

**WinTAK** was specifically designed for desktop PCs, laptops, and tablets that use the Windows operating system. The WinTAK is a software component that adds a specific feature to an existing program. When the WinTAK supports CBRNE plug-ins, it enables customization. It enables third-party developers [Draper Laboratories] to extend the application with CBRNE plugins.

The "product grouping" strategy for ubiquitous WinTAK CBRNE sensing: Microsoft backed away from their goal of one billion Windows 10 devices in three years (or "by the middle of 2018") and reported on 26 September 2016 that Windows 10 was running on over 400 million devices, and in March 2019 on more than 800 million.

## DTRA's Purpose

The Research & Development Directorate, Chemical and Biological (RD-CB) Department of the Defense Threat Reduction Agency (DTRA) issued on May 7, 2019, a Broad

Agency Announcement (BAA) Call CBI-01 "Chemical and Biological Threats: Tactical Assault Kit Plugins for Warning & Reporting and Decision Making" under BAA HDTRA1-19-S-0005.

DTRA's purpose for developing the iTAK, ATAK, and WinTAK is the same as Golden's purpose for inventing certain devices for "product grouping". That is to have ubiquitous CBRNE sensing [CBRNE sensing in all places at all times].

Under the implied authorization or consent, Draper, Microsoft, Google, Apple, Samsung, LG, Qualcomm, Intel, and Hewlett Packard have "manufactured for the Government" products and devices that allegedly infringes claim 5 of Golden's '287 patent, claim 23 of Golden's '439 patent, and claim 1 of Golden's '189 patent.

The government's authorization of or consent to a contractor's infringing activity may be express or implied, *TVI Energy Corp. v. Blane*, 806 F.2d 1057, 1060 (Fed. Cir. 1986); *Hughes Aircraft Co. v. United States*, 534 F.2d 889, 901 (Ct. Cl. 1976). To succeed on an implied authorization theory there must be some explicit government action, such as a contracting officer's instruction, or evidence extrinsic to the contract language showing the government's intention to assume liability, *Va. Panel*, 133 F.3d at 870; *Larson*, 26 Cl. Ct. at 370.

The purpose behind permitting the government's authorization or consent to be implied is tied to the government's need to procure items without disruption, *TVI Energy*, 806 F.2d at 1060; *Robishaw Eng'g Inc. v. United States*, 891 F. Supp. 1134, 1145 (E.D. Va. 1995)

The following diagram illustrates how a person skilled in the art would know the ATAK, that is built on the Android operating system, provides a single interface for viewing and controlling different CBRN-sensing technologies. A person skilled in the art would know it is not about singling out the Google smartphone. The device is not suitable for use without all four components. The four combined components are elements of Plaintiff's CMDC invention.



The following chart illustrates how the DTRA harnessed [product grouped] Golden's patented CMDC Devices, CPUs, and Multi Sensor Detection Devices to satisfy the utility requirement needed for the iTAK, ATAK, and WinTAK. Without Golden's patented CMDC Devices, CPUs, and MSD devices, the iTAK, ATAK, and WinTAK software is useless; the iTAK, ATAK, and WinTAK OSs were not designed to operate without Golden's patented inventions.

| DEPARTMENT OF DEFENSE (DOD) DEFENSE THREAT REDUCTION AGENCY (DTRA) | | | | | | |
|---|---|---|---|---|---|---|
| **iTAK** | **ATAK** | | | | **WinTAK** | |
| **Apple iPhone 12 Smartphone** | **Google Pixel 5 Smartphone** | **Samsung Galaxy S21 Smartphone** | **LG V60 ThinQ 5G** | **Asus / Qualcomm Smartphone for Snapdragon Insiders** | **Samsung Galaxy Book2 Pro 360 [PC Mode or Tablet Mode]** | **HP ZBook Fury 15.6 Inch G8 Mobile Workstation PC** |
|  |  |  |  |  |  |  |
| **Chipset:** Apple A14 Bionic (5 nm). **CPU:** Hexacore (2x3.1 GHz Firestorm + 4x1.8 GHz Icestorm). | **Chipset:** Qualcomm Snapdragon 765G **CPU:** Octa-core (1 × 2.4 GHz Kryo 475 Prime | **Chipset:** Qualcomm SM8350 **CPU:** Octa-core (1x2.84 GHz Cortex-X1 & 3x2.42 GHz | **Chipset**: Qualcomm SM8250 **CPU:** Octa-core (1x2.84 GHz Cortex-A77 & 3x2.42 GHz | **Chipset:** Qualcomm SM8350 **CPU:** Octa-core (1x2.84 GHz Cortex-X1 & 3x2.42 GHz | **CPU**: Intel® Core™ i5-1235U / Intel® Core™ i71255U. Processor Speed 1.3GHz / 1.7 GHz. | **CPU**: 11th Generation Intel® Xeon® W-11955M vPro® with Intel® UHD Graphics |
| **OS**: Apple iOS 14.1, upgradable to iOS 16.1 | **OS**: Google Android 11, upgradable to Android 13 | **OS**: Google Android 11, upgradable to Android 13 | **OS**: Google Android 10, upgradable to Android 13 | **OS**: Google Android 11 | **OS**: Preinstalled Microsoft Windows 11 | **OS**: Preinstalled Microsoft Windows 11 Pro2 |
| **CBRNE PLUGINS** Draper Laboratory, Inc | **CBRNE PLUGINS** Draper Laboratory, Inc | **CBRNE PLUGINS** Draper Laboratory, Inc | **CBRNE PLUGINS** Draper Laboratory, Inc | **CBRNE PLUGINS** Draper Laboratory, Inc | **CBRNE PLUGINS** Draper Laboratory, Inc | **CBRNE PLUGINS** Draper Laboratory, Inc |

28 U.S. Code § 1498 (a): "Whenever an invention described in and covered by a patent of the United States is *used* [in the above chart Golden have three inventions that are covered by his U.S. Patents—CMDC Devices; CPUs; and Multi Sensor Detection Devices—that's being "*used*" by the United States] … by or for the United States without license of the owner thereof or lawful right to *use* or manufacture the same, the owner's remedy shall be by action against the

United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such *use* and manufacture."

 Therefore, until the Government can prove the iTAK, the ATAK, and the WinTAK; that are interconnected to Golden's patented CMDC Devices, CPUs, and Multi Sensor Detection Devices, can operate and function without the three essential patented inventions of Golden; the United States have "*used*", and continues to "*use*" Golden's patented inventions "without license of the owner thereof or lawful right…" iTAK was developed for the Apple iOS operating systems; ATAK was developed for the Google Android operating systems; and WinTAK was developed for the Microsoft Windows operating systems.

## PRAYER FOR RELIEF

 Wherefore, Golden respectfully requests that this Court enter:

 A. A judgment in favor of Golden that the defendant has infringed at least one or more claims of the '287 Patent, the '439 Patent, and the '189 Patent as aforesaid;

 B. A permanent injunction enjoining the defendant, its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents and all others acting in active concert or privity therewith from direct, indirect and/or joint infringement of the '287, '439, and '189 patents as aforesaid pursuant to 35 U.S.C. § 283;

 C. A judgment and order requiring the defendant to pay Golden its damages with pre- and post-judgment interest thereon pursuant to 35 U.S.C. § 284;

 D. As set forth in Golden's preliminary infringement contentions that the Defendant in this case is making, using, offering for sale, selling and/or importing the aforementioned alleged infringing devices that have at a minimum, directly infringed the '287, '439, and '189 patents. The Defendant is thereby liable for infringement of the '287, '439, and '189 patents

pursuant to 35 U.S.C. § 271. The Defendant has caused damage to Golden, which infringement and damage will continue unless and until the Defendant is enjoined.

E.      Any and all further relief to which the Court may deem Golden entitled.


## DEMAND FOR JURY TRIAL

Golden requests a trial by jury on all issues so triable by right pursuant to Fed. R. Civ. P. 38. A right guaranteed under the Seventh Amendment of the Constitution.




Sincerely,

## s/ *Larry Golden*

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 864-288-5605

Email: atpg-tech@charter.net

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 9th day of August, 2023, a true and correct copy of the foregoing "Plaintiff's Response to Defendant's Motion to Dismiss", was served upon the following Defendant by priority "express" mail and via email:

Grant D. Johnson

Trial Attorney

Commercial Litigation Branch

Civil Division

Department of Justice

Washington, DC 20530

Grant.D.Johnson@usdoj.gov

(202) 305-2513

s/ *Larry Golden*

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

(H) 864-288-5605