Case No: 1:23-cv-00811-EGB

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Larry Golden, Plaintiff, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

(864) 992-7104

| | |
|---|---|
| LARRY GOLDEN,<br><br>*Plaintiff*,<br><br>V.<br><br>UNITED STATES,<br><br>*Defendant*. | **Direct Patent Infringement Under 28 U.S.C. § 1498**<br><br><br>August 29, 2023 |

## PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE

Pursuant to Rule 201 of the Federal Rules of Evidence, the court has the authority to take judicial notice of an adjudicative fact that is "not subject to reasonable dispute" such that it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Courts may take judicial notice of matters of record in other proceedings. *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803, n.2 (9th Cir. 2002); *United States v. S. California Edison Co.*, 300 F. Supp. 2d 964, 973 (E.D. Cal. 2004)

Moreover, "[c]ourts have the power to judicially recognize their own records of prior litigation closely related to the present case. Although not required to take judicial notice, courts often recognize part of the record in the same proceeding or in an earlier stage of the same controversy." Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 201.12[3] (Joseph M. McLaughlin ed., 2d ed. 2010); see *Gilmore v. City of Montgomery*, 417 U.S. 556, 568 n.8 (1974) (notice by district court of evidence of defendant's discriminatory activities presented in prior case before same judge); *Young v. Selsky*, 41 F.3d 47, 50-51 (2d Cir. 1994) (notice by circuit court of defendant's prior testimony in related proceedings); *Brown v. Lippard*, 472 F.3d 384, 387 (5th Cir. 2006) (notice by trial court of existence of testimony in earlier dismissed action); *United States v. Estep*, 760 F.2d 1060, 1063 (10th Cir. 1985) (notice by district court of transcript of [] trial that preceded hearing on motion for return of property).

## STATEMENT OF FACTS

The following "statement of facts" includes essential background facts that are necessary for following the narrative of the instant case. The "statement of facts" does not include facts that are meaningless to the resolution of the legal issue and the Court's understanding of its narrative.

Unlike the *Golden v. USA* Case No. 13-307C, whereby the Department of Homeland (DHS) ("Government") released a solicitation in 2007 [DHS S&T BAA07-10] for the development, assembly, manufacture, and commercialization of a new, improved upon, and useful cell phone capable of CBRNE detection; in *Golden v. USA* Case No. 23-811C, the Department of Defense (DOD); Defense Threat Reduction Agency (DTRA) released a solicitation in 2019 [RD-CB BAA HDTRA1-19-S-0005] for Topic CBI-01 "Chemical and Biological Threats: TAK Plugins for Warning & Reporting. This topic supports the development of ATAK, WinTAK, and WebTAK compatible versions of existing decision support tools for

chemical and biological warning and reporting, hazard prediction, and consequence assessment. The proposed software applications should be able to operate both with network connectivity and without.

Tactical Assault Kit (TAK) is a situational awareness solution designed for military and first responder personnel. On the original development team for ATAK for Android devices under the U.S. Air Force Research Laboratory, Draper Laboratory Inc. contributed to initial design and core software.

Draper designed a chemical, biological, radiological and nuclear (CBRN) Plugin to enable users to integrate CBRN sensors into TAK, collect CBRN sensor data, display it on a map and livestream it across the TAK network to other users. CBRN plugins for ATAK, WinTAK and WebTAK are operational in the field.

Draper supports non-military operations at the local, state, and federal levels by developing [CBRN] plugins for CivTAK (Android Team Awareness Kit for Civilians Tactical Assault Kit (TAK). https://www.draper.com/explore-solutions/tak

## STANDARD FOR JUDICIAL REVIEW

Patent infringement claims under § 1498 are based on products that are made by or for the United States directly, such as pursuant to a government contract. Section 1498 applies to every US patent, and is triggered in one of two scenarios: (1) the federal government itself practices a patented invention, or (2) a private party acting for or on behalf of the government infringes a patent, and does so with the government's authorization or consent. A plaintiff at the CFC cannot enjoin the government from infringing or seek treble damages, but it can recover "reasonable and entire compensation for such use and manufacture."

The Supreme Court explained the import of § 1498, stating that it was meant to "relieve the contractor entirely from liability of every kind for the infringement of patents in manufacturing anything for the government" in order "to stimulate contractors to furnish what was needed for the war, without fear of becoming liable themselves for infringement." See *Richmond Screw Anchor Co. v. U.S.*, 275 U.S. 331 (1928).

In *Advanced Software Design Corp. v. Federal Reserve Bank of St. Louis*, 583 F.3d 1371, 1376–77 (Fed. Cir. 2009), the Federal Circuit interpreted the term "for the government" to mean that the government derives a benefit from the use or manufacture of the patented technology. For example, the patented technology itself must be used "in furtherance and fulfillment of a stated Government policy," which would serve the government's interest, for the government's benefit, *IRIS Corp. v. Japan Airlines Corp.*, 769 F.3d 1359, 1362 (Fed. Cir. 2014) (quoting *Madey v. Duke Univ.*, 413 F. Supp. 2d 601, 607 (M.D.N.C. 2006)).

Excluding the CBRNE Plugins of Draper Laboratory Inc. and the software applications of the DTRA is *NOT* an option. The Federal Circuit in *FastShip, LLC v. U.S.*, "[W]e interpret "manufactured" in § 1498 [] such that a product is "manufactured" when it is made to include each limitation of the thing invented and is therefore "suitable for use".

The Department of Defense (DOD); Defense Threat Reduction Agency (DTRA) and the third-party contractor Draper Laboratory Inc. cannot simply be ignored. If Plaintiff's alleged infringement claim was about whether Google infringes, a private party, the claim must be dismissed in favor of a suit against the United States. *See Saint-Gobain Ceramics & Plastics, Inc. v. II-VI Inc.*, 369 F.Supp.3d 963 (2019).

Plaintiff never alleged Google is a third-party government contractor with authorization and consent to manufacture for the Government, CBRNE Plugins or ATAK software.

## JUDICIAL NOTICE OF DEFENDANT'S REPLY TO THE GOVERNMENT'S MOTION TO DISMISS [DKT. 21]

Plaintiff never alleged Google is a third-party government contractor with authorization and consent to manufacture for the Government, CBRNE Plugins or ATAK software.

The Government's strategy to show Plaintiff and this Court as ignorant or downright stupid is reflected in the Government's reply. **(Exhibit A)** After countless unsuccessful attempts to identify the CBRNE plugins of Draper and the software application of DTRA for connecting plugins [hardware] to the Android OS technology platform, the Government always lean on the stupidity of Plaintiff and this Court to make this case about Google.

This case is about the Government authorizing and consenting to the manufacture of Plaintiff's patented "Multi-Sensor Detection System" or Plaintiff's patented "Cell Phone Detection System".

The Federal Circuit on 09/08/2022, in *Larry Golden v. Google LLC*; Case No. 22-1267 made a ruling on Plaintiff's "Cell Phone Detection System" that comprises Plaintiff's "Multi-Sensor Detection System":

> "Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 … It [claim chart] attempts [] to map claim limitations to infringing product features, and it does so in a relatively straightforward manner …[W]e conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart. Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart.…"

For clarity, Plaintiff has included the following chart to show this case is not about the Google Pixel 5 smartphone. It is about the "DoD/DTRA ATAK CBRNE SENSOR SYSTEM".

## DoD DTRA ATAK Multi-Sensor Detection System—CBRN

| DoD/DTRA ATAK CBRN Sensor System | Patent #: 9,589,439; Independent Claim 19 | Patent #: 9,096,189; Independent Claim 7 |
|---|---|---|
| With DTRA … ATAK includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | A multi-sensor detection system for detecting at least one explosive, nuclear, contraband, chemical, biological, human, radiological agent, or compound, comprising: | A multi-sensor detection system for detecting at least one explosive, nuclear, contraband, chemical, biological, human, or radiological agents and compounds, comprising: |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) With DTRA … ATAK includes chemical, biological, radiological, and nuclear (CBRN) plug-ins.<br><br>The Defense Threat Reduction Agency (DTRA) CBRN ISA: Seamlessly integrates information and control of multiple sensors into a single dashboard, making it easier to detect CBRN threats and monitor a warfighter's vitals https://thelastmile.gotennapro.com/four-useful-atak-app-plugins/ | a plurality of sensors for detecting at least one chemical, biological, radiological, explosive, nuclear, human, or contraband agent or compound, capable of being disposed within, on, upon or adjacent a multi-sensor detection device; | a plurality of sensors for detecting at least one chemical, biological, radiological, explosive, nuclear, human or contraband agents and compounds and capable of being disposed within, on, upon or adjacent a multi sensor detection device; |
| ATAK is an Android smartphone geospatial infrastructure and situational awareness app https://www.civtak.org/atak-about/. ATAK can be downloaded to a phone, tablet, or handheld device. ATAK is a government-off-the-shelf app for Android smartphones. The mobile broadband 4G LTE connection is able to facilitate the data throughput required for the operation of the ATAK. https://apps.dtic.mil/sti/pdfs/AD1069441.pdf | monitoring equipment comprising at least one of a computer, personal computer (PC), laptop, notebook PC, handheld, cell phone, personal digital assistant (PDA) or smart phone for at least one of a receipt or transmission of signals therebetween; | monitoring equipment comprising at least one of plurality product groups based on the categories of a computer, laptop, notebook, PC, handheld, cell phone, PDA or smart phone for the receipt and transmission of signals therebetween; |

| | | |
|---|---|---|
| The Android phone connects to a cell tower or base station via radio waves, and that tower is usually physically connected to the infrastructure to send that data wherever it needs to go. Draper designed a chemical, biological, radiological and nuclear (CBRN) Plugin to enable users to integrate CBRN sensors into TAK, collect CBRN sensor data, display it on a map and livestream it across the TAK network to other users. CBRN plugins for ATAK, WinTAK and WebTAK are operational in the field. https://www.draper.com/explore-solutions/tak | at least one cell phone tower interconnected to the monitoring equipment for sending signals thereto and receiving signals therefrom or at least one satellite capable of transmitting signals to the monitoring equipment; | at least one cell phone tower interconnected to the monitoring equipment for sending signals thereto and receiving signals therefrom or at least one satellite capable of transmitting signals to the monitoring equipment; |
| The Android-based smartphone[s] now contained integrated satellite on-the move capability, on-the-move mapping solutions, and a commercial laser range finder that significantly expanded the end-user range data flow and functionality. The Primary, Alternate, Contingency, and Emergency (PACE) communications architectures established was: • Primary communications structure (P): ATAK—4G/LTE; Antenna: international [] satellite (INMARSAT) https://apps.dtic.mil/sti/pdfs/AD1069441.pdf | at least one satellite or at least one cell phone tower capable of signal communication between the multi-sensor detection device and the monitoring equipment; | at least one satellite or at least one cell phone tower capable of signal communication between the multi sensor detection device and the monitoring equipment; |
| The internet connection is shared by many ATAK functions on the Android smartphone such as internet browsing, receiving email messages and installing apps. Wi-Fi is a method for devices such as the Android smartphone to connect wirelessly to the Internet using radio waves. | at least one internet connection capable of communication between the multi-sensor detection device and the monitoring equipment; | at least one internet connection capable of communication between the multi sensor detection device and the monitoring equipment; |

7

| | | |
|---|---|---|
| Sit(x) is a commercial Server-as-a-Service solution based on the TAK platform developed by PAR Government for the U.S. Defense & Intelligence Community. Sit(x) has real-time communication and information sharing. With Sit(x), individuals and teams can communicate via personal computers and handheld mobile devices by voice or text. They can share real-time full-motion video (FMV), airborne/drone imagery, GPS locations, photos, and satellite imagery. Fully secure and compatible with ATAK, WinTAK, and iTAK. Sit(x) accessed via free downloadable gateway apps. | whereupon a signal sent to a receiver of the multi-sensor detection device from a satellite; or to a cell phone tower; or through at least one of a short-range radio frequency or a long-range radio frequency; causes a signal to be sent to the monitoring equipment that includes at least one of location data or sensor data; | whereupon a signal sent to a receiver of the multi sensor detection device from a satellite; or to a cell phone tower; or through short and/or long-range radio frequency; causes a signal to be sent to the monitoring equipment that includes location data and sensor data; |
| The '439 & '189 patent specs: Product grouping (PG) 1 (storage & transportation); PG 2 (sensors); PG 3 (detector case; modified and adapted); PG 4 (monitoring & communication devices); PG 5 (communication methods); PG 6 (biometrics); and, PG 7 (authorized person) | wherein the monitoring equipment or multi-sensor detection device receives a signal via any of one or more products of any product grouping categories; | wherein the monitoring equipment or multi sensor detection device receives a signal via any of one or more products listed in any of the plurality of product grouping categories; |
| The Android-based smartphone[s] now contained integrated satellite

Wi-Fi is a method for devices such as the Android smartphone to connect wirelessly to the Internet using radio waves…

The internet connection is shared by many ATAK functions on the Android smartphone such as internet browsing, receiving email messages; installing apps…

The Android phone connects to a cell tower or base station via radio waves, and that tower is usually physically connected to the infrastructure to send that data wherever it needs to go. | wherein at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency connection, or short-range radio frequency (RF) connection is capable of signal communication with the transmitter, a receiver of the monitoring equipment, the multi-sensor detection device, or transceivers of the products; | wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long and short-range radio frequency (RF) connection is capable of signal communication with the transmitter and the receiver of the monitoring equipment or multi sensor detection device and transceivers of the products; |

| | | |
|---|---|---|
| BIOMETRICS: Biometric factors allow for secure authentication on the Android platform. The Android framework includes face and fingerprint biometric authentication. Android can be customized to support other forms of biometric authentication (such as Iris).<br><br>ATAK is an Android smartphone geospatial infrastructure and situational awareness app https://www.civtak.org/atak-about/. ATAK can be downloaded to a phone, tablet, or handheld device. | wherein the monitoring equipment is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan or signature such that the monitoring device that is at least one of the computer, the laptop, the notebook, the PC, the handheld, the cell phone, the PDA, or the smart phone is locked by the biometric lock disabler to prevent unauthorized use; | wherein the monitoring equipment is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan and signature such that the monitoring device that is at least one of the computer, the laptop, the notebook, the PC, the handheld, the cell phone, the PDA, or the smart phone is locked by the biometric lock disabler to prevent unauthorized use; |
| The Android-based smartphone[s] now contained integrated satellite<br><br>Wi-Fi is a method for devices such as the Android smartphone to connect wirelessly to the Internet using radio waves…<br><br>The internet connection is shared by many ATAK functions on the Android smartphone such as internet browsing, receiving email messages; installing apps…<br><br>The Android phone connects to a cell tower or base station via radio waves, and that tower is usually physically connected to the infrastructure to send that data wherever it needs to go. | wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group consisting of satellite, Bluetooth, WiFi, internet, radio frequency (RF), cellular, broadband, long range radio frequency, and short-range radio frequency (RF). | wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group consisting of satellite, Bluetooth, WiFi, internet, radio frequency (RF), cellular, broadband, and long and short-range radio frequency (RF). |

9

**JUDICIAL NOTICE OF PLAINTIFF'S AMENDED COMPLAINT
GOLDEN V. GOOGLE LLC [NDC Case No. 4:22-cv-05246-HSG; Dkt. 42]**

Many inventions are not entirely new but instead build upon previous inventions and provide meaningful improvements. This might involve adding an element to an existing invention, putting an existing invention to a new and unexpected use, or invigorating an old product with a new form of technology.

For example, adding a new technology to an old product occurred when companies started using *microprocessors to control devices* that had been controlled by analog circuitry. These companies succeeded in obtaining patents for the improved devices, which covered the differences between the original version and the new version.

The Amended Complaint describes Google's CBRNE detection and infringement with software sold by Google at Google Play. At least nine (9) "embedded" standard sensors for at least one of CBRNE detection; describes how the Google Pixel Camera is used for CBR sensing. **(Exhibit B)**

## Federal Rules of Evidence > Rule 403. Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

The case law recognizes that certain circumstances call for the exclusion of evidence which is of unquestioned relevance. These circumstances entail risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful

than merely wasting time, at the other extreme. Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission.

Exclusion for risk of unfair prejudice, confusion of issues, misleading the jury, or waste of time, all find ample support in the authorities. "Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.

Sincerely,

s/ *Larry Golden*

Larry Golden, *Pro Se* Plaintiff
740 Woodruff Rd., #1102
Greenville, SC 29607
(H) 8642885605
(M) 8649927104
Email: atpg-tech@charter.net

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 29th day of August, 2023, a true and correct copy of the foregoing "Plaintiff's Request for Judicial Notice", was served upon the following Defendant by priority "express" mail:

Grant D. Johnson

Trial Attorney

Commercial Litigation Branch

Civil Division

Department of Justice

Washington, DC 20530

Grant.D.Johnson@usdoj.gov

(202) 305-2513

s/ *Larry Golden*

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

864-288-5605