Case No: 1:23-cv-00811-EGB

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Larry Golden, Plaintiff, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

(864) 992-7104

| | |
|---|---|
| LARRY GOLDEN, | |
| *Plaintiff*, | **Direct Patent Infringement Under 28 U.S.C. § 1498** |
| V. | |
| UNITED STATES, | September 13, 2023 |
| *Defendant*. | |

### PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE

Pursuant to Rule 201 of the Federal Rules of Evidence, the court has the authority to take judicial notice of an adjudicative fact that is "not subject to reasonable dispute" such that it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

This Court may take judicial notice of matters of record in other proceedings. *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803, n.2 (9th Cir. 2002); *United States v. S. California Edison Co.*, 300 F. Supp. 2d 964, 973 (E.D. Cal. 2004)

Moreover, this "[c]ourt have the power to judicially recognize their own records of prior litigation closely related to the present case. Although not required to take judicial notice, courts often recognize part of the record in the same proceeding or in an earlier stage of the same controversy." Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 201.12[3] (Joseph M. McLaughlin ed., 2d ed. 2010); see *Gilmore v. City of Montgomery*, 417 U.S. 556, 568 n.8 (1974) (notice by district court of evidence of defendant's discriminatory activities presented in prior case before same judge); *Young v. Selsky*, 41 F.3d 47, 50-51 (2d Cir. 1994) (notice by circuit court of defendant's prior testimony in related proceedings); *Brown v. Lippard*, 472 F.3d 384, 387 (5th Cir. 2006) (notice by trial court of existence of testimony in earlier dismissed action); *United States v. Estep*, 760 F.2d 1060, 1063 (10th Cir. 1985) (notice by district court of transcript of [] trial that preceded hearing on motion for return of property).

Pursuant to Rule 403 of the Federal Rules of Evidence, the court has the authority to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

The very same document (Dkt. 21) filed in this case by the Defendant as Exhibit 1 [Order Granting Motion to Dismiss with Leave to Amend, *Golden v. Google LLC*, No. 22-cv-05246-HSG, Dkt. 11 (N.D. Cal. Aug. 10, 2023))]; Plaintiff asked this Court to take judicial notice of because the Defendant presented the NDC case in it "Reply in Support of the Government's Motion to Dismiss" to intimidate this Court into making an improper basis:

> "As noted in the Government's Motion to Dismiss, Mr. Golden has also filed nine district court suits against various electronics manufacturers, all based on his allegations that those firms also used the technology described in his patents. See Dkt. 10 at 4–5. In all nine of those suits, Mr. Golden's complaint was dismissed by the respective district court

2

without the case advancing beyond the pleading stage. See id.; see also, e.g., Ex. 1 (Order Granting Motion to Dismiss with Leave to Amend, *Golden v. Google LLC*, No. 22-cv-05246-HSG, Dkt. 11 (N.D. Cal. Aug. 10, 2023)).

The first and most frequently asserted ground of exclusion in FRE 403 is "unfair prejudice"; that is, the likelihood this Court will misuse the evidence in some way or give it undue weight. Unfair prejudice is "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"). See *United States v. Brandon*, 521 F.3d 1019, 1026 (8th Cir. 2008) (unfair prejudice refers not to "legitimate probative force" of evidence, but to "its capacity to lure a jury [Court] into declaring guilt for an improper reason"), cert. denied, 129 S. Ct. 314.

The Government's evidence was submitted to confused the issues, mislead the Court, and waste more valuable time, when in fact, the amended complaint was necessary because after the Federal Circuit's order on 09/08/2022, in *Larry Golden v. Google LLC*; Case No. 22-1267, to "VACATE AND REMAND" the relevant Case No: 22-1267 Document 15; back to the District Court "to be filed and request service of process"; Google has discontinued the making, offering for sell, and selling of the Google Pixel 5 Smartphone; discontinued the use of Qualcomm's Snapdragon chipset, thereby eliminating Plaintiff's "joint infringement" claim; and discontinued offering for sell, and selling, the ATAK-Military on Google Play, to avoid liability for the actions brought against them.

The Government continues to intimidate this Court to adjudicate this case as a dispute between private parties (Golden v. Google). This case is and has always been about Plaintiff's belief the Government, more specifically, the DoD authorized and consented to the Defense Threat Reduction Agency's (DTRA) manufacture for the United States an Android Tactical Assault Kit (ATAK) for CBRNE sensing.

In *Zoltek V*, the appellate court emphasized that § 1498(a) is "its own independent cause of action" with three elements to trigger government liability: (1) the invention must be claimed in a patent; (2) it must be "used or manufactured by or for the United States," meaning each limitation of the claims must be present in the accused product or process; and (3) the "use or manufacture" of the patented invention must be done without license or lawful right—i.e., "use of an invention that, if done by a private party, would directly infringe the patent."

In applying these three requirements, the Zoltek court found that a government contractor's product [ATAK] made by a patented process for use by the government fell within the scope of § 1498(a)'s waiver of sovereign immunity because a private party would be liable for direct infringement under 35 U.S.C. § 271(a). Which is outside this Court's jurisdiction.

The Federal Circuit in *FastShip, LLC v. U.S.*, "[W]e interpret "manufactured" in § 1498 [] such that a product is "manufactured" when it is made to include each limitation of the thing invented and is therefore "suitable for use". The smartphone limitation requirement must be satisfied for the ATAK to be considered "suitable for use".

The Department of Defense (DOD); Defense Threat Reduction Agency (DTRA) cannot simply be ignored. If Plaintiff's alleged infringement claim was about whether Google infringes, a private party, the claim must be dismissed in favor of a suit against the United States. *See Saint-Gobain Ceramics & Plastics, Inc. v. II-VI Inc.*, 369 F.Supp.3d 963 (2019).

The Federal Circuit in *Golden v. Google* Case No. 22-1267, determined: "Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone [which includes the ATAK-CBRNE Plugins], to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189. It attempts [] to map claim limitations [which includes the ATAK-CBRNE Plugins] to infringing product features, and it does so in a

relatively straightforward manner. We conclude that the district court's decision in the Google case is not correct with respect to at least the three claims [which includes limitations for CBRNE detection i.e., the ATAK-CBRNE Plugins] mapped out in the claim chart. Mr. Golden has made efforts to identify exactly how the accused products meet the limitations [which includes the ATAK-CBRNE Plugins] of his claims in this chart."

Vertical stare decisis binds this lower courts to follow strictly the decisions of the higher courts within the same jurisdiction (e.g., the U.S. Court of Federal Claims must follow the decision of the U.S. Court of Appeals for the Federal Circuit). The Supreme Court defines vertical stare decisis as the doctrine, "a lower court must strictly follow the decision(s) handed down by a higher court within the same jurisdiction".

The Federal Circuit does not have jurisdiction over a particular region. Instead, it has jurisdiction over all appeals in cases that "arise under" the patent laws. The Federal Circuit's jurisdiction over appeals in patent cases is exclusive.

The Northern District of California Court in *Golden v. Google LLC*, No. 22-cv-05246-HSG; determined direct infringement only occurs when the ATAK is included, which means the Plaintiff's invention is only "manufacture" and "suitable for use" under the provisions of this U.S. Court of Federal Claims § 1498 cause of action. The NDC Court states:

> "Plaintiff includes a claim chart purporting to describe the components of the Google Pixel 5 (which Plaintiff asserts is "representative of all the alleged infringing products of Google asserted in this complaint") that allegedly map onto the elements of an independent claim for each of the asserted patents … however, at least two elements of each independent claim included in the chart are allegedly satisfied only when the phone has the Android Team Awareness Kit (ATAK) downloaded … his own claim chart makes it clear that Defendant's products purportedly infringe because of the characteristics of

5

the ATAK application … [b]ut Plaintiff's complaint alleges that ATAK is not made by Google, and he does not allege that ATAK comes pre-loaded on Google phones":

> "Through collaboration and innovation, the Defense Threat Reduction Agency has integrated its powerful, hazard-awareness-and-response tools into the Android Tactical Assault Kit (or the Android Team Awareness Kit, ATAK). ATAK is a digital application available to warfighters throughout the DoD. Built on the Android operating system, ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins."

Issue preclusion, also known as collateral estoppel, prevents the Government and this Court from litigating the issue of Google's alleged infringement for three reasons: 1- Google's alleged infringement has been raised and decided in both the U.S. Court of Appeals for the Federal Circuit Case No. 22-1267; and the Northern District of California Court in *Golden v. Google LLC*, No. 22-cv-05246-HSG. 2- The Government had a fair and full opportunity to intervene in the litigation of Google's alleged infringement in both cases. 3- The issue of Google's alleged infringement that include the ATAK-CBRNE Plugins have been decided and rendered as a necessary part of the Court's final judgment.

Plaintiff never alleged Google is a third-party government contractor with authorization and consent to manufacture for the Government, CBRNE Plugins or ATAK software. In Plaintiff's "Informal Complaint" at (Dkt 1) of this Case, Plaintiff states:

> "Defendant, the UNITED STATES DEFENSE THREAT REDUCTION AGENCY (DTRA). The DTRA is both a defense agency and a combat support agency within the U. S. Department of Defense (DoD) for countering weapons of mass destruction and supporting the nuclear enterprise. DTRA provides cross-cutting solutions to enable the DoD, the United States Government, and international partners to deter strategic attack against the United States and its allies; prevent, reduce, and counter WMD and emerging threats; and prevail against WMD-armed adversaries in crisis and

conflict. The Solicitation for this initiative is attached as Exhibit D: DTRA HDTRA-19-S-0005 BAA Call CBI-01"

DTRA Government funding of research that led to the development and testing of the accused devices (e.g., CBNE Plugins; applications; chips) supports a reasonable inference that the Government impliedly sanctioned the infringing activity.

A review of the claim charts presented in this Complaint against the Defense Threat Reduction Agency (DTRA) identifies by name; by name and product number; or by name, model and product number, the devices that allegedly infringes Plaintiff's patents.

ATAK was initially created in 2010 by the Air Force Research Laboratory, and based on the NASA WorldWind Mobile codebase its development and deployment grew slowly, then rapidly since 2016. The Android Team Awareness Kit or TAK is currently used by thousands of Department of Homeland Security personnel, along with other members of the Homeland Security Enterprise including state and local public safety personnel. It is in various stages of transition across DHS components and is the emerging DHS-wide solution for tactical awareness.

In addition to the Android version, there is also a Microsoft Windows version (WinTAK), an Apple iOS version (iTAK), and finally a Virginia-based military tech firm's (LucyTAK). WinTAK is an application developed for the Microsoft Windows Operating System which uses maps to allow for precise targeting, intelligence on surrounding land formations, navigation, and generalized situational awareness. It was developed in conjunction with to provide similar functionality on a Windows platform.

In January 2015, AFRL began licensing ATAK through TechLink to U.S. companies, for commercial use to support state/local government uses as well as civilian uses. As of January 2020, one hundred companies have licensed ATAK for commercial uses. As of March 31, 2020, the civilian version of ATAK, referred to as CivTAK has been approved for "Public Release" by Army Night Vision and is available for download on takmaps.com And subsequently named Android Team Awareness Kit (ATAK) - Civilian.

The Defense Threat Reduction Agency (DTRA) has leveraged TAK for enhanced CBRNE situational awareness with the goal of protecting military and civilian

populations from intentional or incidental chemical or biological threats and Toxic Industrial Chemicals/Materials (TIC/TIM) hazards.

Under the Broad Agency Announcement from the Joint Science and Technology Office (JSTO) Digital Battlespace Management Division, DTRA funded the development of ATAK, WinTAK, and WebTAK compatible versions of existing decision support tools for chemical and biological warning and reporting, hazard prediction, and consequence assessment.

Through collaboration and innovation, the Defense Threat Reduction Agency has integrated its powerful, hazard-awareness-and-response tools into the Android Tactical Assault Kit (or the Android Team Awareness Kit, ATAK). ATAK is a digital application available to warfighters throughout the DoD. Built on the Android operating system, ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. Warfighters use ATAK to guide themselves to safety when confronted with a release of chemical and biological agents and radiological and nuclear threats (CBRN).

ATAK can connect to sensors on many platforms (e.g., satellites, drones, smartwatches) and has many plugins that warfighters can download. ATAK provides a single interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents.

Warfighters positively evaluated the CBRN plug-ins at the 2019 Chemical and Biological Operational Analysis (CBOA) event, where warfighters evaluated several technology prototypes for their utility in chemical and biological defense. Warfighters reported that the CBRN capabilities in ATAK are easy to use with minimal training.

Overall, the U.S. armed forces and their interagency and coalition partners value ATAK and the common operating picture it provides. DTRA continues to develop CBRN-specific plug-in capabilities to support warfighters on the battlefield."

Plaintiff has included the following chart to show this case is not about the Google Pixel 5 smartphone *per se*. It is about the "DoD/DTRA ATAK CBRNE SENSOR SYSTEM".

## DoD DTRA ATAK Multi-Sensor Detection System—CBRN

| DoD/DTRA ATAK CBRN Sensor System | Patent #: 9,589,439; Independent Claim 19 | Patent #: 9,096,189; Independent Claim 7 |
|---|---|---|
| With DTRA … ATAK includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | A multi-sensor detection system for detecting at least one explosive, nuclear, contraband, chemical, biological, human, radiological agent, or compound, comprising: | A multi-sensor detection system for detecting at least one explosive, nuclear, contraband, chemical, biological, human, or radiological agents and compounds, comprising: |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) With DTRA … ATAK includes chemical, biological, radiological, and nuclear (CBRN) plug-ins.<br><br>The Defense Threat Reduction Agency (DTRA) CBRN ISA: Seamlessly integrates information and control of multiple sensors into a single dashboard, making it easier to detect CBRN threats and monitor a warfighter's vitals https://thelastmile.gotennapro.com/four-useful-atak-app-plugins/ | a plurality of sensors for detecting at least one chemical, biological, radiological, explosive, nuclear, human, or contraband agent or compound, capable of being disposed within, on, upon or adjacent a multi-sensor detection device; | a plurality of sensors for detecting at least one chemical, biological, radiological, explosive, nuclear, human or contraband agents and compounds and capable of being disposed within, on, upon or adjacent a multi sensor detection device; |
| ATAK is an Android smartphone geospatial infrastructure and situational awareness app https://www.civtak.org/atak-about/. ATAK can be downloaded to a phone, tablet, or handheld device. ATAK is a government-off-the-shelf app for Android smartphones. The mobile broadband 4G LTE connection is able to facilitate the data throughput required for the operation of the ATAK. https://apps.dtic.mil/sti/pdfs/AD1069441.pdf | monitoring equipment comprising at least one of a computer, personal computer (PC), laptop, notebook PC, handheld, cell phone, personal digital assistant (PDA) or smart phone for at least one of a receipt or transmission of signals therebetween; | monitoring equipment comprising at least one of plurality product groups based on the categories of a computer, laptop, notebook, PC, handheld, cell phone, PDA or smart phone for the receipt and transmission of signals therebetween; |

| | | |
|---|---|---|
| The Android phone connects to a cell tower or base station via radio waves, and that tower is usually physically connected to the infrastructure to send that data wherever it needs to go. Draper designed a chemical, biological, radiological and nuclear (CBRN) Plugin to enable users to integrate CBRN sensors into TAK, collect CBRN sensor data, display it on a map and livestream it across the TAK network to other users. CBRN plugins for ATAK, WinTAK and WebTAK are operational in the field. https://www.draper.com/explore-solutions/tak | at least one cell phone tower interconnected to the monitoring equipment for sending signals thereto and receiving signals therefrom or at least one satellite capable of transmitting signals to the monitoring equipment; | at least one cell phone tower interconnected to the monitoring equipment for sending signals thereto and receiving signals therefrom or at least one satellite capable of transmitting signals to the monitoring equipment; |
| The Android-based smartphone[s] now contained integrated satellite on-the move capability, on-the-move mapping solutions, and a commercial laser range finder that significantly expanded the end-user range data flow and functionality. The Primary, Alternate, Contingency, and Emergency (PACE) communications architectures established was: • Primary communications structure (P): ATAK—4G/LTE; Antenna: international [] satellite (INMARSAT) https://apps.dtic.mil/sti/pdfs/AD1069441.pdf | at least one satellite or at least one cell phone tower capable of signal communication between the multi-sensor detection device and the monitoring equipment; | at least one satellite or at least one cell phone tower capable of signal communication between the multi sensor detection device and the monitoring equipment; |
| The internet connection is shared by many ATAK functions on the Android smartphone such as internet browsing, receiving email messages and installing apps. Wi-Fi is a method for devices such as the Android smartphone to connect wirelessly to the Internet using radio waves. | at least one internet connection capable of communication between the multi-sensor detection device and the monitoring equipment; | at least one internet connection capable of communication between the multi sensor detection device and the monitoring equipment; |

| | | |
|---|---|---|
| Sit(x) is a commercial Server-as-a-Service solution based on the TAK platform developed by PAR Government for the U.S. Defense & Intelligence Community. Sit(x) has real-time communication and information sharing. With Sit(x), individuals and teams can communicate via personal computers and handheld mobile devices by voice or text. They can share real-time full-motion video (FMV), airborne/drone imagery, GPS locations, photos, and satellite imagery. Fully secure and compatible with ATAK, WinTAK, and iTAK. Sit(x) accessed via free downloadable gateway apps. | whereupon a signal sent to a receiver of the multi-sensor detection device from a satellite; or to a cell phone tower; or through at least one of a short-range radio frequency or a long-range radio frequency; causes a signal to be sent to the monitoring equipment that includes at least one of location data or sensor data; | whereupon a signal sent to a receiver of the multi sensor detection device from a satellite; or to a cell phone tower; or through short and/or long-range radio frequency; causes a signal to be sent to the monitoring equipment that includes location data and sensor data; |
| The '439 & '189 patent specs: Product grouping (PG) 1 (storage & transportation); PG 2 (sensors); PG 3 (detector case; modified and adapted); PG 4 (monitoring & communication devices); PG 5 (communication methods); PG 6 (biometrics); and, PG 7 (authorized person) | wherein the monitoring equipment or multi-sensor detection device receives a signal via any of one or more products of any product grouping categories; | wherein the monitoring equipment or multi sensor detection device receives a signal via any of one or more products listed in any of the plurality of product grouping categories; |
| The Android-based smartphone[s] now contained integrated satellite

Wi-Fi is a method for devices such as the Android smartphone to connect wirelessly to the Internet using radio waves…

The internet connection is shared by many ATAK functions on the Android smartphone such as internet browsing, receiving email messages; installing apps…

The Android phone connects to a cell tower or base station via radio waves, and that tower is usually physically connected to the infrastructure to send that data wherever it needs to go. | wherein at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency connection, or short-range radio frequency (RF) connection is capable of signal communication with the transmitter, a receiver of the monitoring equipment, the multi-sensor detection device, or transceivers of the products; | wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long and short-range radio frequency (RF) connection is capable of signal communication with the transmitter and the receiver of the monitoring equipment or multi sensor detection device and transceivers of the products; |

| | | |
|---|---|---|
| BIOMETRICS: Biometric factors allow for secure authentication on the Android platform. The Android framework includes face and fingerprint biometric authentication. Android can be customized to support other forms of biometric authentication (such as Iris).<br><br>ATAK is an Android smartphone geospatial infrastructure and situational awareness app https://www.civtak.org/atak-about/. ATAK can be downloaded to a phone, tablet, or handheld device. | wherein the monitoring equipment is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan or signature such that the monitoring device that is at least one of the computer, the laptop, the notebook, the PC, the handheld, the cell phone, the PDA, or the smart phone is locked by the biometric lock disabler to prevent unauthorized use; | wherein the monitoring equipment is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan and signature such that the monitoring device that is at least one of the computer, the laptop, the notebook, the PC, the handheld, the cell phone, the PDA, or the smart phone is locked by the biometric lock disabler to prevent unauthorized use; |
| The Android-based smartphone[s] now contained integrated satellite<br><br>Wi-Fi is a method for devices such as the Android smartphone to connect wirelessly to the Internet using radio waves…<br><br>The internet connection is shared by many ATAK functions on the Android smartphone such as internet browsing, receiving email messages; installing apps…<br><br>The Android phone connects to a cell tower or base station via radio waves, and that tower is usually physically connected to the infrastructure to send that data wherever it needs to go. | wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group consisting of satellite, Bluetooth, WiFi, internet, radio frequency (RF), cellular, broadband, long range radio frequency, and short-range radio frequency (RF). | wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group consisting of satellite, Bluetooth, WiFi, internet, radio frequency (RF), cellular, broadband, and long and short-range radio frequency (RF). |

The Government's strategy to show Plaintiff and this Court as ignorant or downright stupid is reflected in the Government's reply. After countless unsuccessful attempts to identify the CBRNE plugins of Draper and the software application of DTRA for connecting the plugins [hardware] to the Android OS technology platform, the Government always lean on the hope that Plaintiff is stupid and this Court's inability to be impartial and unbiased, and make this case about Google to avoid Government liability.

Sincerely,

s/ *Larry Golden*

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605

(M) 8649927104

Email: atpg-tech@charter.net

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 13th day of September, 2023, a true and correct copy of the foregoing "Plaintiff's Reply in Support of Plaintiff's Request for Judicial Notice", was served upon the following Defendant by priority "express" mail:

Grant D. Johnson

Trial Attorney

Commercial Litigation Branch

Civil Division

Department of Justice

Washington, DC 20530

Grant.D.Johnson@usdoj.gov

(202) 305-2513

s/ *Larry Golden*

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

864-288-5605